THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JEFF VAN OSTRAN, Defendant-Appellant.

Fourth District   No. 4—87—0526

Opinion filed April 21, 1988.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Nancy Owen, State's Attorney, of Charleston (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant Jeff Van Ostran was charged by information with three counts of aggravated criminal sexual assault. (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1).) In the absence of a plea agreement, defendant pleaded guilty to the offenses charged. Thereafter defendant was diagnosed as suffering from borderline mental retardation. At the hearing on aggravation and mitigation defendant made a motion to withdraw his guilty plea claiming he was unable to understand the nature and consequences of his plea. The circuit court of Coles County denied the motion and sentenced defendant to 10 years in the Illinois Department of Corrections. Defendant filed a formal motion to withdraw his guilty plea which was also denied. Defendant appeals and we affirm.

On April 21, 1987, defendant pleaded guilty to charges alleging he knowingly committed an act of sexual penetration with an eight-year-old and, on two separate occasions, committed the same act with an 11-year-old. Before he entered his plea defendant was advised of the charges against him, his rights and the effect of a guilty plea on those rights. The admonitions, although proper, were given *en masse* to defendant and two other unrelated defendants who also entered guilty pleas.

In a motion to withdraw his guilty plea, defendant alleged he responded to the trial court's inquiries by answering the same as, or "parroting," the answer of the defendant admonished prior to him. Defendant testified his impressions of the April 21, 1987, hearing were as follows:

"[Defendant]: [T]he judge asked [the other defendant] some questions and she said, '[Y]es, sir, Your Honor' and then he

asked me and I said 'yes,' because I thought it was all right to say that. I didn't know what it was talking about, but I still agreed to it.

[Defense Attorney]: Did you understand in your own mind back on April 21 everything the judge was saying to you?

[Defendant]: No, sir. I didn't.

[Defense Attorney]: Did you have a clear understanding back on April 21 that if you pled guilty to the charges that the Judge would have to sentence you to the penitentiary for at least six years?

[Defendant]: I realized a little bit of it. That was about it."

On cross-examination the State's Attorney asked: "So, you knew that *** you would go to the penitentiary if you plead [sic] guilty, didn't you, Jeff?" Defendant responded: "Yeah, I guess."

Prior to sentencing, defendant was examined by two clinical psychologists and a presentence investigation report (PSI) was issued to the trial court. The first examination of defendant, performed by Dr. Jerry Boyd, revealed defendant's intellectual and personality limitations, but Dr. Boyd specifically denied any evidence of mental retardation or pedophilia. Dr. Boyd characterized defendant as a poor candidate for mental health treatment. Dr. John E. Grimes subsequently diagnosed defendant as suffering from borderline mental retardation and brain damage. Dr. Grimes reported that defendant would benefit from counseling rather than incarceration and made the following observations:

"I have serious doubts that [defendant] understood his Miranda rights as they were read to him and that also that he read and signed (I saw a copy). Keep in mind that he is fully capable of pronouncing correctly without having any idea of knowing what he is reading. Yet, his very nature causes him to be a 'smart mouth' when confronted by authority figures, and he does not have the insight or intelligence to speak up and admit that he does not understand something or that he is deficient in anything."

On appeal defendant argues the medical opinion in the record diagnosing borderline mental retardation supports his claim he entered a guilty plea only because he was parroting the other defendants and did not understand the full implications of the plea.

■ It is within the trial court's sound discretion whether a guilty plea may be withdrawn. We will not disturb this exercise of discretion unless defendant establishes his guilty plea was entered through a misapprehension of the facts or law, he has a worthy defense, or his

guilt is in doubt and justice requires that his case be tried. (*People v. Spicer* (1970), 47 Ill. 2d 114, 264 N.E.2d 181.) We find no abuse of discretion.

■ The trial judge was in the best position to observe defendant's conduct and demeanor both at the time of the guilty plea and at the hearing on the motion to withdraw the plea. When defendant said he was parroting the responses of the other defendants admonished and did not fully understand the consequences of his plea, the trial judge was free to regard the testimony as "at best improbable and at worst false." (*People v. Kwiek* (1959), 18 Ill. 2d 121, 124, 163 N.E.2d 474, 476, *cert. denied* (1960), 363 U.S. 804, 4 L. Ed. 2d 1147, 80 S. Ct. 1238.) Defendant's admission that he knew he would go to the penitentiary if he pleaded guilty was especially indicative of his apprehension of the law and the consequences of his guilty plea.

■ While an *en masse* admonishment is not the most favored procedure to employ when an intellectually deficient defendant is involved, it is clear from the record the trial judge took the necessary precautions to ensure defendant made an intelligent, voluntary and independent plea of guilty. Defendant was carefully admonished as to the charges against him, his constitutional right to a jury trial and the effect of his guilty plea. The record does not indicate defendant misunderstood the proceedings or the law as they were explained to him. Furthermore, there is no support for Dr. Grimes' conclusion defendant's intellectual limitations kept him from acknowledging he was confused by the trial court's admonition. In fact, defendant spoke up several times during the proceedings and admitted his bewilderment, whereupon the court further explained the law until defendant indicated without hesitation that he understood. Most importantly the trial judge made it clear to defendant the *en masse* proceeding did not require him to give up a right simply because one of the other defendants elected to do so.

■ We note that a defendant is competent to plead guilty if he is capable of understanding the proceedings and assisting in his own defense even if he may be mentally or emotionally disturbed. (*People v. Heral* (1976), 62 Ill. 2d 329, 336-37, 342 N.E.2d 34, 38; *People v. Ryan* (1979), 74 Ill. App. 3d 886, 392 N.E.2d 1380.) Neither of the psychiatrists who examined defendant questioned his competency or capacity to enter a knowing and voluntary guilty plea. Thus, we conclude defendant's intellectual ability is not so low as to have rendered him incompetent to plead guilty.

■ Next defendant contends he was denied effective assistance of counsel at sentencing. The standard for judging defense counsel's

*effectiveness is whether his* performance was sufficiently deficient to prejudice defendant and undermine confidence in the outcome. Even a professionally unreasonable error does not warrant setting aside the judgment in a criminal case if the error had no prejudicial effect on the judgment. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005.

■ Defendant claims he would have received a lesser sentence if his counsel had not acquiesced to the introduction of a victim-impact statement (VIS) (Ill. Rev. Stat. 1985, ch. 38, par. 1406) which was irrelevant, inadmissible and had a prejudicial impact on the sentencing process.

First, defendant maintains his counsel should have rejected the VIS because it was prepared by the victims' stepfather rather than by the victims themselves. The Bill of Rights for Victims and Witnesses of Violent Crimes Act (Act) (Ill. Rev. Stat. 1985, ch. 38, par. 1401 *et seq.*) allows the victim to address the court at sentencing regarding the impact the defendant's conduct has had on him. A written impact statement is required prior to sentencing and "[t]he court shall consider any statements made by the victim, along with all other appropriate factors in determining the sentence of the defendant." (Ill. Rev. Stat. 1985, ch. 38, par. 1406.) The Act in part defines a victim as "a person physically injured in this State as a result of a violent crime perpetrated or attempted against that person *or \*\*\* the \*\*\* parent \*\*\* of any person granted rights under this Act who is physically or mentally incapable of exercising such rights.*" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 1403.

In *People v. Rainey* (1986), 149 Ill. App. 3d 327, 500 N.E.2d 602, this court held it was error for the mother of a 12-year-old sexual assault victim to prepare the VIS when the victim gave competent testimony at trial and there was no evidence that she was unable to prepare the statement and testify at the sentencing.

In *People v. Reid* (1987), 160 Ill. App. 3d 491, 513 N.E.2d 517, this court distinguished *Rainey* and held it was not error for the trial court to consider a VIS prepared by the parents of a seven-year-old sexual assault victim. "Simply because the seven-year-old victim was found competent to testify and that she could relate the facts of what happened to her does not mean she is capable of preparing a written statement about the physical and emotional impact of the crime on her life." (*Reid*, 160 Ill. App. 3d at 494, 513 N.E.2d at 519.) The language in *Reid* does not suggest that parents of seven-year-olds but not 12-year-olds are automatically substituted, for purposes of the

statute, as the victims of a sexual assault involving their child. Whether a victim is mentally capable of drafting a written VIS depends entirely on the victim's age coupled with his ability to communicate.

The victims here were ages 8 and 11, respectively, when defendant was sentenced. The record is devoid of any indication whether the girls were physically, mentally or emotionally able or unable to prepare a written statement on their own behalf. The victims did not testify at the sentencing hearing and one VIS was prepared for both girls.

Although defense counsel should have demanded the State strictly adhere to the statutory guidelines relating to the rights of victims (Ill. Rev. Stat. 1985, ch. 38, par. 1401 *et seq.*), we do not find defense counsel's nonfeasance constituted actual incompetency under the *Strickland* standard. A close examination of the record reveals defendant was not prejudiced by his counsel's failure to object to the content and author of the VIS.

■ It is well established that the impact of a crime on the victim and the victim's family is a relevant and proper factor to be considered by the court in imposing sentence. (See *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 469 N.E.2d 1137; *People v. Sowinski* (1986), 148 Ill. App. 3d 231, 498 N.E.2d 650.) The record indicates the VIS was not the only source of information available to the trial judge at sentencing which reported the psychological impact of the crime on the victims. In a section of the PSI entitled "Effect on Victim," the probation officer reported: "According to the police reports, the victims' mother *** stated that both girls experienced a decline in their scholastic work and a definite change in their behavior. [The 11-year-old] in particular, began withdrawing from both friends and family." It is apparent the trial judge would have been aware of the dramatic effect of the sexual assaults on the two young victims regardless of whether the VIS was allowed into evidence.

■ Second, defendant argues he was prejudiced by his counsel's failure to object to the VIS on the grounds that it was inflammatory in nature and focused on the effect of the crime on the victims' family. Defendant relies on the recent Supreme Court opinion of *Booth v. Maryland* (1987), 482 U.S. ___, 96 L. Ed. 2d 440, 107 S. Ct. 2529, wherein the introduction of a victim impact statement at the sentencing phase of a capital murder case was held to violate the eighth amendment. In *Booth* the jury was read an emotionally charged VIS describing the impact of the murder on the victims' family members and containing opinions as to what conclusions the jury should draw

from the evidence when deciding whether to impose the death sentence.

*Booth* is not dispositive of whether defense counsel's failure to object to the VIS constituted actual incompetence because the Court specifically limited its holding to capital cases. In a footnote the Court stated: "Our disapproval of victim impact statements at the sentencing phase of a capital case does not mean, however, that this type of information will never be relevant in any context. *** Facts about the victim and family also may be relevant in a noncapital criminal trial." (*Booth*, 482 U.S. at ___ n.10, 96 L. Ed. 2d at 451 n.10, 107 S. Ct. at 2535 n.10.) Whether or not the VIS was proper in this case, it is clear from the record the trial judge did not place undue emphasis on it in sentencing so as to prejudice defendant.

Defendant pleaded guilty to the crime of criminal sexual assault carrying a sentencing range of a minimum of six years' to a maximum of 30 years' imprisonment. Defendant was sentenced to 10 years in the Department of Corrections. In sentencing defendant the trial court commented on defendant's willingness to cooperate, but noted defendant attempted to shift the blame for his conduct to the victims. Even though defendant acknowledged his conduct was wrongful, he did not take full responsibility for his actions and their consequences. Such an attitude belies any showing by defendant of a penitent spirit. *People v. Davis* (1981), 93 Ill. App. 3d 187, 195, 416 N.E.2d 1179, 1185.

■ The trial judge cited several other considerations which prompted him to sentence defendant to five years in excess of the minimum: (1) the report of Dr. Boyd indicating defendant is an unlikely candidate for mental health treatment; (2) the suggestion made by the VIS that the victims suffered substantial psychological injury as a result of defendant's conduct; and (3) defendant's conviction of two separate and distinct incidents of sexual abuse. All such factors were properly considered by the trial court in imposing sentence. (*People v. Morgan* (1974), 59 Ill. 2d 276, 282, 319 N.E.2d 764, 768.) Thus, we cannot say defendant was prejudiced by introduction of the VIS, nor was there abuse of discretion in sentencing defendant to a period longer than the minimum provided by statute.

■■ Finally, defendant argues the trial court erred in ordering him to pay $50 for the services of the public defender without considering defendant's ability to pay. Initially, we note defendant waived this contention of error when he failed to object to the assessment of fees in the trial court. (*People v. Kerker* (1984), 121 Ill. App. 3d 1072, 460 N.E.2d 771.) Even if defendant had preserved this issue

for appeal we find no abuse of discretion. The record indicates the trial court found a fee of $50 to be reasonable for the public defender's services and the record supported such a finding. (*People v. Bishop* (1980), 81 Ill. App. 3d 521, 401 N.E.2d 648.) Moreover, the trial court ordered the $50 to be deducted from the $1,000 sum defendant had posted as a 10% bond deposit. Bail money constitutes a fund to satisfy fines and costs incurred by defendant, including the cost of court-appointed representation (Ill. Rev. Stat. 1985, ch. 38, pars. 113—3.1(a), (c)), regardless of who may have furnished the money. *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194; *People v. Ray* (1984), 130 Ill. App. 3d 362, 471 N.E.2d 933.

The judgment of the circuit court of Coles County is affirmed.

Affirmed.

GREEN, P.J., and LUND, J., concur.