**The PEOPLE of the State of Colorado, Petitioner/Cross–Respondent,**

v.

**Randall Lee LESKE, Respondent/Cross– Petitioner.**

**No. 96SC693.**

Supreme Court of Colorado, En Banc.

April 13, 1998.

Rehearing Denied May 18, 1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Paul Koehler, Assistant Attorney General, Kim L. Montagriff, Assistant Attorney General, Criminal Enforcement Section, Denver, for Petitioner/Cross–Respondent.

David F. Vela, Colorado State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, for Respondent/Cross–Petitioner.

Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari to consider the decision of the court of appeals in *People v. Leske*, 937 P.2d 821 (Colo.App.1996). The court of appeals vacated the respondent's conviction and sentence for sexual assault on a child, concluding that it was a lesser included offense of sexual assault on a child by one in a position of trust ("position of trust"). The court of appeals affirmed the trial court's decision to impose sentences within the aggravated range for the respondent's remaining convictions. We granted certiorari to consider whether the defendant could be convicted of both the sexual assault on a

child and position of trust offenses, and whether the trial court abused its discretion by imposing sentences outside the presumptive range.[1] We hold that sexual assault on a child is not a lesser included offense of sexual assault on a child by one in a position of trust, and therefore reverse the court of appeals' judgment vacating the respondent's conviction and sentence for sexual assault on a child. We affirm the court of appeals' judgment that the trial court did not abuse its discretion by imposing sentences in the aggravated range.

## I.

On March 17, 1994, the respondent, Randall Lee Leske, was charged by information in the District Court of the City and County of Denver with one count of sexual assault on a child,[2] one count of sexual assault on a child by one in a position of trust,[3] and one count of aggravated incest.[4] The charges arose from allegations that the respondent sexually assaulted his four-year-old daughter, N.L., on February 17, 1994.

Before he was charged, the respondent confessed to the police in writing that he had subjected N.L. to sexual contact in order to relieve "sexual" and "financial" stress. The respondent later filed a motion to suppress this statement, along with other oral and written statements, arguing that they were involuntary and coerced. At the conclusion of the suppression hearing, the trial court denied the motion, finding that the respondent "understood his rights as read to him" and that "there was no coercion or pressure brought upon him by the police".

A jury found the respondent guilty on all counts. Following a sentencing hearing, the trial court determined that aggravating factors justified imposing sentences outside the presumptive range. The court sentenced the respondent to concurrent terms of sixteen years imprisonment for the sexual assault conviction, twenty-two years imprisonment for the position of trust conviction, and twenty-eight years for the aggravated incest conviction.

The court of appeals affirmed the position of trust and aggravated incest convictions and sentences, but vacated the conviction and sentence for sexual assault on a child. *See Leske*, 937 P.2d at 822–23. The court of appeals held that, pursuant to section 18–1–408(5)(a), 8B C.R.S. (1986), sexual assault on a child is a lesser included offense of sexual assault on a child by one in a position of trust, and that the respondent's sexual assault on a child conviction must be vacated under the "doctrine of merger." *Id.* at 825. The prosecution subsequently petitioned for certiorari review, arguing that the court of appeals erroneously vacated the sexual assault on a child conviction. The respondent cross-petitioned, alleging, *inter alia*, that the court of appeals erred by affirming the trial court's imposition of sentences in the aggravated range.

## II.

We first review the law with respect to multiple punishments for the same criminal act. We reject the respondent's contention that section 18–1–408(5)(a), 6 C.R.S. (1997), adopts an "evidentiary test" for determining lesser included offenses. Applying a strict elements test to the respondent's convictions, we conclude that sexual assault on a child is

1. We granted certiorari to consider the following issues:
 1. Whether the lesser included offense analysis of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and 18–1–408, 8B C.R.S. (1986 & 1996 Supp.), can encompass factors other than the elements of the offenses in question, e.g., other statutory sections and trial evidence.
 2. Whether sexual assault on a child, 18–3–405, 8B C.R.S. (1986 & 1996 Supp.), is a lesser included offense of sexual assault on a child by one in a position of trust, § 18–1–405.3, 8B C.R.S. (1996 Supp.).

 3. Whether the court of appeals erred in holding that the sentence imposed was not an abuse of discretion.

2. *See* 18–3–405(1), 8B C.R.S. (1986) (current version at 18–3–405(1), 6 C.R.S. (1997)).

3. *See* 18–3–405.3, 8B C.R.S. (1996 Supp.) (current version at 18–3–405.3, 6 C.R.S. (1997)).

4. *See* 18–6–302(1)(a), 8B C.R.S. (1986) (current version at 18–6–302(1)(a), 6 C.R.S. (1997)).

not a lesser included offense of sexual assault on a child by one in a position of trust.

## A.

■ Generally, "[a] court is prohibited from imposing multiple punishments for a greater and lesser included offense by the Double Jeopardy Clauses of the federal and state constitutions,[5] by statute, and by the judicially-created rule of merger." *Armintrout v. People*, 864 P.2d 576, 578–79 (Colo. 1993) (citations & footnote omitted). At common law, the rule of merger provided that a defendant could not be convicted of both misdemeanors and felonies arising from the same criminal act because the misdemeanors "merged" into the felonies. *See People v. Henderson*, 810 P.2d 1058, 1059 (Colo.1991). However, the common law doctrine of merger has been largely abandoned, and in Colorado "judicial merger has consistently been analyzed under double jeopardy principles." *Id.* at 1060. Thus, regardless of whether double jeopardy or merger principles are invoked, we employ an identical analysis to determine whether a lesser offense is "included" within a greater offense. *See People*

*v. Rodriguez*, 914 P.2d 230, 287 (Colo.1996); *Henderson*, 810 P.2d at 1061.[6] For purposes of both double jeopardy and merger, a defendant may be subjected to multiple punishments based upon the same criminal conduct as long as such punishments are "specifically authorized" by the General Assembly. *See, e.g., Rodriguez*, 914 P.2d at 287 ("The purpose [of merger] is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments."); *Henderson*, 810 P.2d at 1061 (" '[T]he role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization' " (quoting *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977))).[7]

The General Assembly has expressly provided that, "[w]hen any conduct of a defendant establishes the commission of more than one offense, the defendant may be prosecuted for each such offense." 18–1–408(1), 6 C.R.S. (1997). Under certain circumstances, however, the legislature has directed that a

5. The Colorado Constitution provides that "[n]o person shall be ... twice put in jeopardy for the same offense." Colo. Const. art. II, 18. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb," and is applicable to state prosecutions through the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). It provides three separate constitutional protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

6. Where a trial terminates in the defendant's favor and the prosecution seeks retrial, "we have interpreted the Double Jeopardy Clause of the Colorado Constitution more expansively than the United States Supreme Court's construction of its federal counterpart." *People v. Serravo*, 823 P.2d 128, 141 (Colo.1992). The United States Supreme Court has held that the federal Double Jeopardy Clause does not absolutely prohibit retrial if the trial court improperly dismissed a charge on grounds unrelated to factual guilt or

innocence. *See United States v. Scott*, 437 U.S. 82, 98–99, 98 S.Ct. 2187, 2197–2198, 57 L.Ed.2d 65 (1978) (where trial is terminated prior to a jury verdict on grounds unrelated to guilt or innocence, prosecution may appeal trial court decision even when reversal would result in a second trial). In contrast, the Colorado Double Jeopardy Clause prohibits retrial on a charge "*whenever* the first trial results in a final judgment favorable to the defendant." *Serravo*, 823 P.2d at 142.

In determining, however, whether double jeopardy principles bar multiple punishments for the same criminal conduct, the United States and Colorado Double Jeopardy Clauses are coextensive. *See Henderson*, 810 P.2d at 1061 ("In reviewing multiple punishments for the same offense, the federal and state Double Jeopardy Clauses play a more limited role than when reviewing subsequent prosecutions.... '[T]he role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization ....' " (quoting *Boulies v. People*, 770 P.2d 1274, 1278 (Colo.1989))); *People v. Haymaker*, 716 P.2d 110, 117 (Colo.1986).

7. Conversely, if the legislature has not conferred such specific authorization, double jeopardy and merger principles preclude the imposition of multiple punishments. *See Boulies*, 770 P.2d at 1279.

defendant may not be subjected to multiple convictions for the same criminal conduct, including when "[o]ne offense is included in the other, as defined in subsection (5) of this section ...." 18–1–408(1)(a). Pursuant to subsection (5)(a), a lesser offense is "included" in a greater offense when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged."

■ ■ We have consistently interpreted section 18–1–408(5)(a) as requiring a court to compare the statutory elements of the offenses in question, not the evidence presented at trial, in determining whether an offense is lesser-included. *See, e.g., People v. Garcia,* 940 P.2d 357, 361 n. 3 (Colo.1997); *Armintrout,* 864 P.2d at 579; *People v. Raymer,* 662 P.2d 1066, 1069 (Colo.1983); *People v. Bartowsheski,* 661 P.2d 235, 245 (Colo. 1983).[8] Under this "strict elements test," also known as the "statutory elements test" or the "*Blockburger* test," if proof of the facts establishing the statutory elements of the greater offense necessarily establishes all of the elements of the lesser offense, the lesser offense is included for the purposes of section 18–1–408(5)(a). *See, e.g., Armintrout,* 864 P.2d at 579; *Bartowsheski,* 661 P.2d at 245. If, however, each offense necessarily " 'requires proof of at least one additional fact which the other does not,' " the strict elements test is not satisfied and a presumption arises that convictions for both offenses is consistent with legislative intent. *Henderson,* 810 P.2d at 1063 (quoting *Wicker v. State,* 462 So.2d 461, 462 (Fla.1985)); *see*

*Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) ("The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

## B.

■ ■ Despite our longstanding construction of section 18–1–408(5)(a) as mandating application of a strict elements test, the respondent insists that the plain language of the statute requires use of an "evidentiary test" for determining lesser-included offenses.[9] Specifically, the respondent argues that we have ignored the plain language of the provision by "mutating" the words, "proof" and "facts" into the phrase, "statutory elements." We are not persuaded.

Subsection (5)(a) does not require application of an evidentiary test. It is true that the statute, by its terms, provides that an offense is lesser included when it is "established by *proof* of the same or less than all the *facts* required to establish the charged offense." 18–1–408(5)(a) (emphasis added). The provision is silent, however, on the question of whether proof of a lesser included offense is established when the facts establishing its elements are proven at trial by evidence, or only when proof of the facts required to establish the elements of the greater offense necessarily establishes the elements of the lesser offense.

---

**8.** Although application of the strict elements test does not involve an analysis of the evidence presented at trial, it may properly involve an examination of the charging documents or the judgment of conviction if commission of a greater offense requires commission of a predicate offense. In this situation, the elements of the predicate offense, as indicated by the charging document, are incorporated into the greater offense. *See Boulies,* 770 P.2d at 1282 (the strict elements test "must proceed initially from an analysis ... of the *charges actually brought* and the *convictions actually obtained* in the case at hand.") (emphasis added); *Bartowsheski,* 661 P.2d at 245 ("[I]f the proof of the greater offense *as charged* necessarily includes the very same elements required for the lesser offense, the lesser offense is necessarily included in the greater") (emphasis added); *see also Harris v. Oklahoma,*

433 U.S. 682, 682–83, 97 S.Ct. 2912, 2912–13, 53 L.Ed.2d 1054 (1977) (per curiam) (where defendant was convicted of felony murder based upon underlying felony of robbery with firearms, the federal Double Jeopardy Clause barred subsequent prosecution for robbery with firearms); *People v. Allen,* 868 P.2d 379, 382 n. 8 (Colo. 1994) ("*Harris* has been interpreted as requiring a court to ... compare whether the proof of one offense is incorporated in the proof of the elements of the other offense.").

**9.** The "evidentiary test" provides that "an offense is lesser included when the evidence of the two crimes, as shown at trial, establishes the elements of the lesser offense." *People v. Rivera,* 186 Colo. 24, 27, 525 P.2d 431, 433 (1974).

Because section 18–1–408(5)(a) contains no language imposing an evidentiary test, we do not construe it as abrogating settled caselaw employing the strict elements test. *See Robinson v. Kerr,* 144 Colo. 48, 52, 355 P.2d 117, 120 (1960) (" 'Statutes are not presumed to alter the common law otherwise than the act expressly provides.' " (quoting *In re Reynolds' Guardianship,* 60 Cal. App.2d 669, 141 P.2d 498, 500 (1943))); *see also United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993) (the strict elements test "has deep historical roots and has been accepted in numerous precedents of [the United States Supreme Court]."). The legislature has twice amended section 18–1–408 since we first interpreted subsection (5)(a) as requiring application of the strict elements test, but has neither altered the language of that subsection nor indicated in any other manner that our use of the strict elements test is contrary to legislative intent. We can therefore reasonably presume that the legislature agrees with our construction of the provision. *See Vaughan v. McMinn,* 945 P.2d 404, 409 (Colo.1997) ("The legislature is presumed to be aware of the judicial precedent in an area of law when it legislates in that area."); *Tompkins v. DeLeon,* 197 Colo. 569, 571, 595 P.2d 242, 243–44 (1979) ("When the legislature reenacts or amends a statute and does not change a section previously interpreted by settled judicial construction, it is presumed that it agrees with judicial construction of the statute.").

Interpreting subsection (5)(a) as instituting an evidentiary test would also cause that provision to conflict with subsection (3). Subsection (3) provides that:

When two or more offenses are charged as required by subsection (2)[10] of this section and they are *supported by identical evidence,* the court upon application of the defendant may require the state, at the conclusion of all the evidence, to elect the count upon which the issues shall be tried. If more than one guilty verdict is returned as to any defendant in a prosecution where multiple counts are tried as required by subsection (2) of this section, *the sentences imposed shall run concurrently;* except that, where multiple victims are involved, the court may, within its discretion, impose consecutive sentences.

18–1–408(3), 6 C.R.S. (1997) (emphasis added). Thus, subsection (3) provides that the trial court must impose concurrent sentences for multiple convictions arising from the same criminal episode when there is a single victim and the convictions are supported by identical evidence. *See People v. Anderson,* 187 Colo. 171, 174, 529 P.2d 310, 312 (1974).

If subsection (5)(a) is read as requiring application of an evidentiary test, it would preclude a defendant from being convicted of more than one offense for the same criminal act when the act involves "identical" evidence. *See* 18–1–408(5)(a) (offense is included when "[i]t is established by proof of the same ... facts required to establish the commission of the offense charged"). Under this interpretation, a court could thus never impose concurrent sentences for convictions based upon "identical evidence" because subsection (5)(a) would require that one of the convictions be vacated. Since it would thus effectively nullify the sentencing provisions of subsection (3), we decline to read subsection (5) as evincing a legislative intent for courts to use an evidentiary test for determining lesser-included offenses. *See* 2–4–201(1)(b), 1 C.R.S. (1997) (stating presumption that legislature intends entire statute to be effective); *Thurman v. Tafoya,* 895 P.2d 1050, 1055 (Colo.1995) (statute must be read "as a whole in order to give consistent, harmonious, and sensible effect to all of its parts").[11] We therefore reaffirm our prior

10. Subsection (2) provides that, if the prosecutor, at the time of commencing the prosecution, knows that the defendant's conduct establishes the commission of more than one offense in the prosecutor's judicial district, "all such offenses upon which the [prosecutor] elects to proceed must be prosecuted by separate counts in a single prosecution if they are based on the same act or series of acts arising from the same criminal episode." 18–1–408(2), 6 C.R.S. (1997).

11. The commentary accompanying the statutory predecessor of section 18–1–408 also indicates that, in enacting subsection (5)(a), the legislature intended to adopt the strict elements test. That commentary states that subsection (5) was based on Michigan proposal section 150, which, in

cases holding that, in applying section 18–1–408(5)(a), a court must compare the statutory elements of the charged offenses.

## C.

▮ We next apply the strict elements test to the relevant statutes in the present case. We conclude that the court of appeals erroneously vacated the respondent's conviction for sexual assault on a child.

The respondent was convicted under separate statutory sections proscribing sexual assault on a child and sexual assault on a child by one in a position of trust. The statute defining sexual assault on a child provides:

> Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim.

18–3–405(1), 6 C.R.S. (1997). The elements of the offense of sexual assault on a child by one in a position of trust are set forth in a separate statutory section:

> Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child by one in a position of trust if the victim is a child less than eighteen years of age and the actor committing the offense is one in a position of trust with respect to the victim.

18–3–405.3(1), 6 C.R.S. (1997).[12] Violation of the position of trust offense "is a class 3 felony if the victim is less than fifteen years of age and is a class 4 felony if the victim is fifteen years of age or older but less than eighteen years of age." 18–3–405.3(2).

An examination of the two statutes indicates that proof of the elements of the position of trust offense does not necessarily establish the elements of the sexual assault on a child offense. First, an actor may be convicted of the position of trust offense even though no four-year age disparity exists between the actor and the victim. Second, an actor may be convicted of the position of trust offense even when the victim is fifteen years of age or older but less than eighteen years of age.

Relying on section 18–1–408(5)(a), the court of appeals nevertheless determined that sexual assault on a child is a lesser-included offense of sexual assault on a child by one in a position of trust. The court stated:

> We recognize that the language of the [sexual assault on a child] statute contains the additional element of a four-year age disparity between the victim and the actor. However, the statute pertains only to victims less than fifteen years of age. Thus, even in a case involving the oldest possible victim, a fourteen-year-old, the prosecution would only be required to prove that the defendant was at least eighteen years old. Of course, a person under the age of eighteen is a child and cannot be prosecuted in district court as an adult unless the charges are transferred from juvenile court or direct-filed pursuant to statute. Therefore, *for purposes of adult felony prosecutions, the age disparity element of the child sexual assault statute merely makes explicit what is jurisdictionally im-*

---

turn, was patterned after a provision of the Model Penal Code. *See* 1963 C.R.S. 40–1–508 (1971 Perm. Cum.Supp.); Michigan Revised Criminal Code 150 (Final Draft, Sept. 1967). According to the drafters of the Model Penal Code, the language contained in section 18–1–408(5)(a) "provides that a lesser offense is necessarily included in a charge of the greater if the proof necessary to establish the greater offense *will of necessity* establish every element of the lesser offense." Model Penal Code 1.08, cmt. at 40 (Tentative Draft No. 5, 1956) (emphasis added). Thus, the drafters of the Model Penal Code did not intend to replace the *Blockburger* strict elements test with an evidentiary test.

**12.** Section 18–3–401(3.5), 6 C.R.S. (1997) provides:

> One in a "position of trust" includes, but is not limited to, any person who is a parent or acting in the place of a parent and charged with any of a parent's rights, duties, or responsibilities concerning a child, including a guardian or someone otherwise responsible for the general supervision of a child's welfare, or a person who is charged with any duty or responsibility for the health, education, welfare, or supervision of a child, including foster care, child care, family care, or institutional care, either independently or through another, no matter how brief, at the time of an unlawful act.

plicit in the requirements for prosecution under the [position of trust] statute....

*Leske*, 937 P.2d at 825 (emphasis added) (citations omitted). With respect to adult prosecutions, the court held that "a conviction for child sexual assault by one in a position of trust *as a class three felony* under 18-3-405.3 necessarily encompasses the lesser-included offense of sexual assault on a child under 18-3-405." *Id.* (Emphasis added.) Thus, because the respondent was prosecuted for violating the position of trust statute as a class three felony, the court of appeals determined that an element of the position of trust offense was that the victim was less than fifteen years of age. Based upon this determination and the fact that the district court generally does not have jurisdiction over defendants that are under eighteen years of age, the court of appeals reasoned that the age disparity element of the sexual assault on a child offense is "jurisdictionally implicit" in the position of trust offense. *Id.*

The prosecution contends that the court of appeals' merger analysis impermissibly treats a sentence enhancement provision of the position of trust statute as an element of the offense for purposes of double jeopardy/merger analysis. In addition, the prosecution argues that the court of appeals erroneously regarded a jurisdictional requirement as an element of the position of trust offense. We agree.

 A statutory penalty enhancement provision, or "penalty enhancer," is not a substantive element of the charged offense for purposes of double jeopardy and merger analysis. *See, e.g., Armintrout,* 864 P.2d at 580 ("[A] sentence enhancement provision is not an element of the offense charged."); *Henderson,* 810 P.2d at 1064 (same). A statutory provision is a penalty enhancer if its proof, while raising the felony level of an offense, is not necessarily required to secure a conviction. *See Almendarez–Torres v. United States,* — U.S. —, —, 118 S.Ct. 1219, 1229, 140 L.Ed.2d 350 (1998) (treating as penalty enhancer statutory provision that need not "be 'proved' to be present ... in order to prove the commission of the relevant crime."); *Armintrout,* 864 P.2d at 579-

80 (where statute raised second degree burglary from a class four felony to a class three felony if burglary was of a "dwelling," but proof that burglary was of "dwelling" was not necessarily required for second degree burglary conviction, "dwelling" provision was sentence enhancer); *Henderson,* 810 P.2d at 1063–64 (where statute raised felony level of second degree kidnapping if it was accompanied by sexual assault, sexual assault was a penalty enhancer because its proof was "not a requisite to a conviction for second-degree kidnapping").

 The statute defining the position of trust offense raises the felony level of the offense if the victim is less than fifteen years of age. *See* 18-3-405.3(2). A conviction for sexual assault by one in a position of trust, however, does not necessarily require proof that the victim was less than fifteen-years-old at the time of the offense. Rather, the statute expressly provides that an actor may be convicted of the offense if the victim is fifteen years of age or older, but less than eighteen-years-old. *See* 18-3-405.3(1). Proof that the victim was under fifteen years of age at the time of the offense thus merely serves to enhance the sentence of the position of trust offense; it is not necessary to establish an element of that offense. The court of appeals therefore erred by concluding that the prosecution was required to prove that N.L. was fifteen years of age or younger as an element of the position of trust offense, and that the victim-age elements of the two offenses were thus identical.

The court of appeals also erred by regarding proof that the actor is eighteen years of age or older as an element of the position of trust offense. We recognize that "a person under the age of eighteen is a child," and in most circumstances "cannot be prosecuted in district court as an adult." *Leske,* 937 P.2d at 825. Nevertheless, the plain language of the position of trust statute contains no requirement that a defendant necessarily be eighteen years of age or older in order to be convicted of the position of trust offense. Because this jurisdictional requirement is not a prerequisite to a position of trust conviction, it is not a substantive element of the offense. *See United States v. Feola,* 420 U.S.

671, 676–77 & n. 9, 95 S.Ct. 1255, 1259–60 & n. 9, 43 L.Ed.2d 541 (1975) (where legislature intends statutory requirement to be only jurisdictional, it is not "necessary element of the substantive offense"); *People v. Morgan*, 785 P.2d 1294, 1301 (Colo.1990) (where jurisdictional requirements of two sovereigns are different, such variations "do not constitute substantive elements of the offenses charged").

The statutory language of the sexual assault on a child offense requires, as a substantive element of the offense, that the victim be fifteen years of age or younger, whereas the position of trust offense requires only that the victim be less than eighteen years of age. Moreover, the position of trust statute contains no explicit or "jurisdictionally implicit" requirement that the actor be at least four years older than the victim. By their terms the statutes defining the offenses thus provide that each offense "requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. We therefore hold that, pursuant to section 18–1–408(5)(a), sexual assault on a child is not a lesser included offense of sexual assault on a child by one in a position of trust.

### III.

We next address the respondent's asserted alternative grounds in support of vacating the sexual assault on a child conviction. We conclude that these grounds do not support the result reached by the court of appeals.

### A.

■ The respondent contends that sexual assault on a child is an included offense under section 18–1–408(5)(c), 8B C.R.S. (1986). According to the respondent, the two offenses are essentially the same except that sexual assault on a child involves less serious injury or risk of injury. We disagree.

We have recognized that an offense may be "lesser included" even when it does not satisfy the strict elements test of section 18–1–408(5)(a). *See Raymer*, 662 P.2d at 1069. Subsection (5)(c), for example, provides that a lesser offense is included when "[i]t differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission." 18–1–408(5)(c).

■ In *Raymer*, we held that subsection (5)(c) precluded convictions for both aggravated robbery and felony murder based upon the aggravated robbery. *See* 662 P.2d at 1070.[13] We determined that aggravated robbery was a lesser included offense because it differed from felony murder only in the sense that felony murder requires a greater degree of injury:

> Where, as here, the robbery victim is actually killed during the course of a robbery, then the crime of aggravated robbery differs from the charge of felony murder only in the sense contemplated by section 18–1–405(5)(c), namely, that an injury less serious than death suffices to establish its commission.

*Id.* at 1070. Thus, under subsection (5)(c), if proof of the facts required to prove the statutory elements of the greater offense necessarily establishes all of the elements of the lesser offense except that the offenses require proof of a different *mens rea* element or degree of injury or risk of injury, the lesser offense is nonetheless included. *See People v. Chapman*, 192 Colo. 322, 325, 557 P.2d 1211, 1213 (1977) (careless driving is lesser included offense of reckless driving under 18–1–408(5)(c) because the offenses are the same except that one involves a "greater degree of negligence"); *People v. Beaver*, 190 Colo. 554, 557, 549 P.2d 1315, 1317 (1976) (where proof of elements of greater offense establishes elements of lesser offense, except that "degree of harm threat-

---

**13.** Under the felony murder statute, a person commits felony murder if, *inter alia*, the person "commits ... robbery ... and, in the course of or in furtherance of the crime ... or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone" 18–3–102(1)(b), 6 C.R.S. (1997). Thus,

where a defendant is charged with felony murder based upon an underlying robbery, the elements of robbery are incorporated into the elements of felony murder. *See Allen*, 868 P.2d at 382 n. 8. As a result, robbery would qualify as a lesser included offense of felony murder based upon the robbery under 18–1–408(5)(a).

ened is less serious" under lesser offense, it is lesser included offense under section 18–1–408(5)(c)).

Contrary to the respondent's argument, the sexual assault on a child offense is not a lesser-included offense under subsection (5)(c). The offenses do not involve different degrees of culpability, injury, or risk of injury. Both offenses contain the same *mens rea* element ("knowingly"), and involve the same injury ("sexual contact"). The offenses differ with respect to other elements. The position of trust offense addresses a different class of victim (children under eighteen years of age) than the sexual assault on a child offense (children fifteen years of age or younger), and requires a relationship of trust between the victim and the actor. In addition, unlike the position of trust offense, the sexual assault on a child offense requires a four-year age disparity between the actor and the victim. Because the offenses differ in ways other than those contemplated by subsection (5)(c), that subsection is inapplicable.

### B.

 The respondent also maintains that, even if sexual assault on a child is not a lesser included offense under section 18–1–408, the court of appeals nevertheless reached the correct result under the "rule of lenity." According to the respondent, the rule of lenity requires that there be only one sexual assault conviction for "the same alleged act of sexual assault on the same child." We agree with the prosecution, however, that the rule of lenity is inapposite.

 The rule of lenity provides that courts must "resolve ambiguities in a penal code in the defendant's favor." *People v. Lowe*, 660 P.2d 1261, 1267 (Colo.1983). Thus,

even where an offense does not qualify as a lesser-included offense under the strict elements test, ambiguity in the statutory scheme defining the offenses in question may require that the conviction of the lesser offense be vacated.[14] In *Lowe*, for example, we held that the rule of lenity precludes convictions for both felony murder and murder after deliberation when there is a single victim. We concluded that, because the statute proscribing first-degree murder provides that felony murder and murder after deliberation are merely alternate ways of committing first-degree murder, ambiguity exists as to whether they are separate offenses for purposes of double jeopardy/merger analysis:

> The crime charged here was first-degree murder. The People filed an information containing two counts. Murder after deliberation was charged in count one and felony murder was alleged in count two. The charges are a reflection of the People's *theories* of first-degree murder. The conduct prohibited by the *Colorado Criminal Code* is first-degree murder. Murder after deliberation and felony murder are not denominated by the Code as separate and independent offenses, but only ways in which criminal liability for first-degree murder may be charged and prosecuted.

660 P.2d at 1269 (footnote omitted); *see also People v. Glover*, 893 P.2d 1311, 1314 (Colo. 1995) ("The rule of lenity permits a conviction for only one first-degree murder when there is a single victim."). However, if no ambiguity exists in a statutory scheme defining substantive criminal offenses, courts may not rely on the rule of lenity to contravene legislative intent. *See Wilczynski v. People*, 891 P.2d 998, 1002 (Colo.1995) (" '[T]he rule of lenity should be used only to resolve statutory ambiguity, and not to create it by disregarding the clear legislative purpose for

---

**14.** Similarly, even where a lesser offense satisfies the strict elements test, it may not be vacated if it is clear from the statutes defining the offenses that the legislature did not intend such a result. In *People v. Moore*, 877 P.2d 840 (Colo.1994), for example, we refused to hold that the defendant's conviction for sexual assault on a child merged into his conviction for first-degree assault. Although a rote application of the strict elements test arguably would have required merger, we concluded that, where the assault and sexual assault involved two different victims, the legislature could not have intended that the more serious sexual assault on a child offense merge into the less serious assault offense. *See id.* at 845–46 ("A statutory interpretation that leads to an absurd result will not be followed."). Absent the kind of unusual circumstances present in *Moore*, however, a lesser offense must be vacated if proof of the elements of the greater offense necessarily establishes the elements of the lesser.

which the statute was enacted.'" (quoting *People v. Forgey*, 770 P.2d 781, 783 (Colo. 1989))).

Here, no ambiguity exists in the statutes defining the sexual assault on a child and position of trust offenses. Unlike in *Lowe*, the two offenses are not merely alternative ways of proving sexual assault. They are denominated in separate and independent statutory sections, and "each statute requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. Thus, nothing in the statutes defining the offenses creates the kind of ambiguity present in *Lowe*.

The respondent relies on our decision in *People v. Hickam*, 684 P.2d 228 (Colo.1984), in support of the proposition that the rule of lenity is nevertheless applicable. In *Hickam*, the defendant was convicted of felony murder and second-degree murder arising from a single homicide. *See* 684 P.2d at 231. Citing *Lowe*, we vacated the defendant's second-degree murder conviction and sentence. *See id.*

The respondent correctly points out that, in *Hickam*, felony murder and second degree murder were denominated in separate statutory sections. However, ambiguity existed because the legislature clearly provided that in other circumstances second degree murder was a lesser included offense of first degree murder when there was only one victim. For example, had the defendant been convicted of second-degree murder and first-degree murder based upon murder after deliberation, the second degree murder conviction would have been a lesser included offense under section 18–1–408(5)(c) because the offenses would have differed only with respect to their *mens rea* elements. Thus, it would have been anomalous to conclude in *Hickam* that a defendant could be convicted of both felony murder, which *Lowe* established as merely a "theory" for proving first degree murder, and second-degree murder based upon the killing of a single victim.

Here, the ambiguity present in *Hickam* does not exist because nothing in the statute defining the position of trust offense indicates that it is merely a theory for proving an offense. Consequently, the rule of lenity

is inapplicable and may not be used to frustrate clearly expressed legislative intent. We therefore conclude that the court of appeals' decision to vacate the sexual assault on a child offense is not justifiable under the rule of lenity.

## IV.

■ Lastly, we consider the propriety of the sentences imposed by the trial court. The court of appeals held that the trial court did not abuse its discretion by imposing sentences in the aggravated range. The respondent contends that the factors cited by the trial court do not constitute extraordinary aggravating circumstances justifying the trial court's sentencing decision. We perceive no error.

For offenses committed on or after July 1, 1993, the Colorado Criminal Code establishes six classes of felonies and a presumptive range of penalties for each class. *See* 18–1–105(1)(a)(V)(A), 6 C.R.S. (1997). Pursuant to section 18–1–105(9)(a), 6 C.R.S. (1997), the sentencing court must "sentence the defendant to a term of at least the midpoint in the presumptive range but not more than twice the maximum term ... in the presumptive range" if one or more enumerated extraordinary aggravating circumstances are present.

■ A court is not, however, precluded from imposing a sentence outside the presumptive range in the absence of one of the extraordinary aggravating circumstances listed in subsection (9)(a). A sentencing court may impose a sentence up to twice the maximum authorized in the presumptive range due to the presence of other extraordinary aggravating circumstances. *See* 18–1–105(6), 6 C.R.S. (1997); 18–1–105(9)(c) ("Nothing in this subsection (9) shall preclude the court from considering aggravating circumstances other than those stated in ... this subsection (9) as the basis for sentencing to a term greater than the presumptive range for the felony.").

■ Because sentencing requires familiarity with the circumstances of a case, a trial court's sentencing decision will not be disturbed absent a clear abuse of discretion.

*See People v. Fuller*, 791 P.2d 702, 708 (Colo. 1990); *see also People v. Vigil*, 718 P.2d 496, 507 (Colo.1986) (trial court is in best position to balance relevant considerations and fix sentence). As we noted in *People v. Edwards*, the discretion afforded a sentencing court is broad but "is not *carte blanche*". 198 Colo. 52, 56, 598 P.2d 126, 128 (1979). A sentencing court abuses its discretion if it fails to consider "the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law and the deterrence of crime, and the protection of the public." *Fuller*, 791 P.2d at 708; *see also* 18–1–102.5, 6 C.R.S. (1997);[15] *People v. Walker*, 724 P.2d 666, 668–69 (Colo. 1986) (trial court must consider " 'the nature and elements of the offense, the character and record of the offender, and all aggravating or mitigating circumstances surrounding the offense and the offender' " (quoting 18–1–105(1)(b)(I), 8 C.R.S. (1985 Supp.))).[16] Moreover, when a court imposes an aggravated sentence that is not based upon a factor set forth in subsection (9)(a), it must make specific findings, supported by evidence in the record of the sentencing hearing or the presentence report, detailing the extraordinary aggravating factors present. *See* 18–1–105(6)–(7).[17]

A defendant convicted of a felony has the statutory right to one appellate review of the sentence imposed by the trial court. *See* 18–1–409, 6 C.R.S. (1997). Like the trial court, the appellate court must consider the offender's character, the public interest, and the nature of the offense in reviewing the sentencing decision. *See id.; People v. Strong*, 190 Colo. 189, 191, 544 P.2d 966, 967 (1976). However, "[w]here the sentencing court finds several factors justifying a sentence in the aggravated range, only one of those factors need be legitimate to support the sentencing court's decision." *People v. Broga*, 750 P.2d 59, 62 (Colo.1988); *see Walker*, 724 P.2d at 670; *see also Vigil*, 718 P.2d at 507 ("[T]he circumstances of the crime alone may justify the imposition of a lengthy sentence, even a sentence approaching the statutory maximum."). Aggravating or mitigating circumstances include:

"unusual aspects of the defendant's character, past conduct, habits, health, age, the events surrounding the crime, pattern of conduct which indicates whether [the defendant] is a serious danger to society, past convictions, and possibility of rehabilitation."

*Walker*, 724 P.2d at 670 (quoting *People v. Phillips*, 652 P.2d 575, 580 (Colo.1982)).

The respondent argues, first, that the trial court abused its discretion by find-

---

**15.** Section 18–1–102.5 provides that the purposes of the Criminal Code with respect to sentencing are:

(a) To punish a convicted offender by assuring the imposition of a sentence he deserves in relation to the seriousness of his offense;

(b) To assure the fair and consistent treatment of all convicted offenders by eliminating unjustified disparity in sentences, providing fair warning of the nature of the sentence to be imposed, and establishing fair procedures for the imposition of sentences;

(c) To prevent crime and promote respect for the law by providing an effective deterrent to others likely to commit similar offenses; and

(d) To promote rehabilitation by encouraging correctional programs that elicit the voluntary cooperation and participation of convicted offenders.

**16.** The trial court is not, however, required to make specific findings regarding each of these factors. *See Walker*, 724 P.2d at 669. Rather, [i]f the sentencing court reasonably explains the sentence imposed on the record, and if the record of the sentencing proceeding contains information permitting the conclusion that the sentencing judge did consider all essential factors as well as evidence supporting the reasons stated for the sentence, a sufficient basis for review is established. *Id.*

**17.** Section 18–1–105(6) provides that a sentencing court may impose a sentence varying from the presumptive range if "it concludes that extraordinary mitigating or aggravating circumstances are present, are based on evidence in the record of the sentencing hearing and the presentence report, and support a different sentence which better serves the purposes of [the Criminal Code] with respect to sentencing . . . ."

Section 18–1–408(7) provides that:
In all cases, except as provided in subsection (9) of this section, in which a sentence which is not within the presumptive range is imposed, the court shall make specific findings on the record of the case, detailing the specific extraordinary circumstances which constitute the reasons for varying from the presumptive sentence.

ing that the psychological and emotional impact of the offenses on N.L. constituted an "extraordinary" circumstance justifying aggravated sentences. According to the respondent, the trial court's findings were insufficient because there was no evidence that the psychological impact was comparatively greater than that experienced by other child sexual assault victims.

We rejected similar reasoning in *People v. Sanchez*, 769 P.2d 1064 (Colo.1989). In *Sanchez*, the trial court sentenced the defendant to sentences in the aggravated range for two separate vehicular assault offenses. 769 P.2d at 1065. The trial court considered as extraordinary aggravating circumstances facts that also tended to prove elements of the offenses in question. *See id.* at 1065–66. The court of appeals vacated the sentences, holding that such facts may not be considered as extraordinary aggravating circumstances for purposes of sentencing. *See id.* at 1066. In reaching this conclusion, the court of appeals relied on its prior decisions in *People v. Garciadealba*, 736 P.2d 1240 (Colo.App.1986), and *People v. Manley*, 707 P.2d 1021 (Colo.App.1985), which held that an element is "an essential constituent of the crime and cannot logically also constitute an 'extraordinary aggravating' attendant circumstance." *Id.* at 1023; *see Garciadealba*, 736 P.2d at 1243.

■■■■ In reversing the court of appeals in *Sanchez*, we held that section 18–1–105(9)(c), 8 C.R.S. (1978 & 1984 Supp.) (now section 18–1–105(9)(c), 6 C.R.S. (1997)), reflected a legislative intent "to encourage careful consideration by a trial court of *all relevant factual matters . . . surrounding the commission of the offense and relating to the defendant*," including facts that tend to establish elements of the offense in question. *Sanchez*, 769 P.2d at 1068 (emphasis added); *see also* 18–1–105(9)(f), 6 C.R.S. (1997) ("The court may consider aggravating circum-

stances . . . notwithstanding the fact that such factors constitute elements of the offense.").[18] Thus, a sentencing court is not precluded from considering as extraordinary aggravating circumstances facts tending to establish an element of an offense—even though these elements must always exist for a conviction—as long as the court relates those facts to the particular defendant and the circumstances of the crime. *See Payne v. Tennessee*, 501 U.S. 808, 819, 111 S.Ct. 2597, 2605, 115 L.Ed.2d 720 (1991) ("[T]he assessment of harm caused by the defendant . . . has understandably been an important concern of the criminal law, both in determining the elements of the offense and in determining the appropriate punishment."); *Phillips*, 652 P.2d at 580 ("[S]ection 105(6) . . . reflects the legislative intent that the court should consider the prior history and circumstances of the defendant and the facts surrounding the offense in determining whether there are facts which justify imposition of a sentence lesser or greater than the presumptive range.").[19]

■■■■ We have never imposed the additional requirement that, before a sentencing court may consider psychological or other adverse impacts of a crime on victims and their families as an extraordinary aggravating circumstance, there must be evidence that the impact is greater than that which is "normally" experienced. *See Payne*, 501 U.S. at 823, 111 S.Ct. at 2607 (evidence of impact of crime on victim "is not offered to encourage comparative judgments," but "to show instead each victim's 'uniqueness as an individual human being'"). Such a requirement would be inconsistent with the legislative intent that sentencing courts be granted broad discretion in distinguishing between "ordinary" and "extraordinary" circumstances depending upon the specific facts of each case. *See Phillips*, 652 P.2d at 582

---

18. A trial court may not impose an aggravated sentence based solely upon the fact that the elements of the offense were proven. The court must consider the circumstances surrounding the commission of the offense, and " 'the punishment should fit the offender and not merely the crime.' " *People v. Watkins*, 200 Colo. 163, 166, 613 P.2d 633, 636 (1980) (quoting *Williams v.*

*New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949)).

19. We have also held that there is no " 'blanket constitutional prohibition against basing an aggravated sentence on an element of the crime.' " *Haymaker*, 716 P.2d at 118; *accord People v. Leonard*, 755 P.2d 447, 450 (Colo.1988).

(Lohr, J., specially concurring, joined by three other justices) (by requiring existence of extraordinary aggravating circumstances for imposition of sentence in aggravated range, legislature did not intend to "compartmentalize and divide precisely the ordinary and the extraordinary").[20] We therefore decline to impose such a requirement here. A sentencing court may consider all facts surrounding the commission of the offense and relating to the defendant when imposing sentence. The court must then exercise its independent judgment in determining if those facts constitute extraordinary aggravating or mitigating circumstances. *See id.* at 579.

Here, in imposing sentences in the aggravated range, the trial court found that:

The case involves ... a four-year-old girl. It involves a child who had a very strong love and bond with her father and his flagrant abuse of that trust. What makes this case different from other cases ... what makes this different and far more aggravated than other cases is the devastation this has caused on the family....

The court also found, based upon a psychiatrist's evaluation contained in the presentence report, that N.L. was experiencing "very many symptoms of anxiety and post-traumatic stress" as a result of the sexual assault.

These findings clearly indicate that the trial court did not violate our holding in *Sanchez* that findings made pursuant to section 18–1–105(6) must be individualized to the defendant and concern facts surrounding the commission of the offense. The trial court did not base its imposition of aggravated sentences upon "generic" circumstances common to all child sexual assault crimes. The court considered, rather, the particularly damaging effect of the respondent's crimes on N.L. in light of her tender years and the fact that the offenses were committed by her father. Although these facts also tended to establish elements of the underlying offenses, the trial court was not thereby precluded from considering them as extraordinary aggravating circumstances. *See* 18–1–105(9)(f); *Sanchez,* 769 P.2d at 1068.

■ In addition, the court properly considered the psychological, emotional, and financial impact on the family resulting from the defendant's incarceration. *See People v. Van Ostran,* 168 Ill.App.3d 517, 119 Ill.Dec. 189, 192–93, 522 N.E.2d 851, 854–55 (1988) (impact of crime on victim and victim's family is proper factor to be considered in imposing sentence). The respondent maintains that a court should not consider financial impact as an extraordinary aggravating circumstance because "[p]otential incarceration of the defendant is a by-product of any criminal conviction." This argument ignores the fact, however, that the defendant's criminal conduct, not his incarceration, is the ultimate cause of any adverse impact on the victim and the victim's family. Consequently, consideration of such impact is a legitimate factor in imposing an aggravated sentence.

■ The respondent also argues that the trial court erroneously relied on his lack of remorse and attempt to shift blame to N.L.'s mother as an extraordinary aggravating circumstance. At the sentencing hearing, the respondent stated that he had been "framed," and that, after discovering R.L.'s

---

**20.** In *People v. Andrews,* 871 P.2d 1199 (Colo. 1994), we held that the sentence aggravator currently set forth in section 18–1–105(9)(a)(V), 6 C.R.S. (1997), which provides that the commission of a felony by a felon who is confined in a correctional institution is an extraordinary aggravating circumstance, did not apply to the crime of felony escape (which includes escape from "lawful confinement" as an element of the offense). We concluded that the legislature did not intend for the sentence aggravator to apply in that case because (1) the aggravator would always apply to the crime of escape, thus effectively precluding application of a sentence in the presumptive range, and (2) the legislature had "provided for enhanced punishment of crimes of escape elsewhere". *Id.* at 1202–03. Our holding was limited, however, to the crime of escape, and was not based upon the fact that proof of the sentence aggravator also tended to prove an element of the underlying offense. *See id.* at 1202. Indeed, we recognized that facts tending to prove an element of the underlying offense may also be considered as extraordinary aggravating circumstances if the legislature intended such a result. *See id.* Thus, our decision in *Andrews* is limited to its facts and does not affect the principle that courts may generally consider all relevant facts surrounding the commission of the offense, and relating to the defendant, as extraordinary aggravating circumstances.

mother had been an incest victim, he had "reason to believe that this entire act was perpetrated by my wife for some unknown reason...." The trial court relied upon these statements, which the court characterized as an "outrageous denial of responsibility and attempt to shift blame to another," as an extraordinary aggravating circumstance.

According to the respondent, a defendant's denial of responsibility for a crime, or failure to show remorse, may not be relied upon as an extraordinary aggravating circumstance because it would essentially penalize him for exercising his constitutional right to maintain his innocence while the case is still subject to post-trial modification and appeal. We conclude that, under the circumstances of the case before us, it is unnecessary to decide this issue.

First, even assuming that the respondent's statements amounted to no more than a denial of guilt, and this denial may not be considered as an extraordinary aggravating circumstance, we would uphold the trial court's sentencing decision because it was supported by other legitimate factors. *See Broga,* 750 P.2d at 62; *Walker,* 724 P.2d at 670. Second, we agree with the court of appeals that "the defendant's attempt to shift blame to his ex-wife was an aggravating circumstance that went far beyond a mere refusal to accept responsibility." *Leske,* 937 P.2d at 826. Given the trial court's determination that the respondent voluntarily confessed to the offenses in writing, the fact that the court relied in part on a letter written by the respondent's ex-wife in imposing extended prison sentences,[21] and the fact that the respondent blamed his ex-wife for the first time at the sentencing hearing, the trial court acted within its discretion in regarding the respondent's remarks as a malicious and retaliatory assault on his ex-wife's character. The trial court thus appropriately considered his attempt to shift blame, under the circumstances, as more than a mere denial of guilt. *See State v. Chaklos,* 528 N.W.2d 225, 228 (Minn.1995) (affirming aggravated sentence based, in part, on defendant's "conduct of

trying to pin the blame for the offense on someone else").

We therefore hold that the trial court did not abuse its discretion. The trial court relied on legitimate factors, supported by evidence from the sentencing hearing and presentence report, in imposing sentences in the aggravated range.

V.

Because sexual assault on a child is not a lesser included offense of sexual assault on a child by one in a position of trust, we reverse the court of appeals' judgment vacating the respondent's conviction and sentence for sexual assault on a child. We affirm the court of appeals' holding that the trial court did not abuse its discretion by imposing sentences in the aggravated range. We remand the case to the court of appeals with directions that the court reinstate the conviction and sentence for sexual assault on a child.

Colorado Court of Appeals, Div. II.

---

21. The court described the letter, which was read into the record at the sentencing hearing, as "the most articulate description of the impact of molestation that I have ever seen."