Gerald Dwayne LEWIS, Petitioner

v.

The PEOPLE of the State of Colorado, Respondent.

No. 09SC252.

Supreme Court of Colorado, En Banc.

Sept. 12, 2011.

Rehearing Denied Oct. 17, 2011.

Douglas K. Wilson, Public Defender, Andrew C. Heher, Deputy Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, John D. Seidel, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

Lewis sought review of the court of appeals' judgment in *People v. Lewis*, No. 04CA2072, 2009 WL 368655 (Colo.App. Feb. 12, 2009) (not published pursuant to C.A.R. 35(f)), which affirmed his convictions and sentences for a number of offenses, including three counts each of kidnapping and sexually assaulting his kidnap victims. In accordance with our holding in *People v. Henderson*, 810 P.2d 1058 (Colo.1991), the trial court sentenced Lewis for sexual assault and separately sentenced him for the second degree kidnapping of each victim, elevated to the level of a class two felony because of the sexual assault. Among its other holdings, the court of appeals rejected Lewis's contention that *Henderson* should be overruled, and it affirmed each of his separate convictions and sentences for sexual assault and class-two-felony kidnapping.

We granted certiorari solely on the question whether *Henderson* should be overruled in light of the United States Supreme Court's subsequent determination, for purposes of certain constitutional guarantees, that any distinction between an "element" of an offense and a "sentencing factor" is inconsequential. *See Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Because these holdings of the Supreme Court neither undermine our prior assessment of legislative intent in *Henderson* nor in any way diminish the dispositive impact of legislative intent on Lewis's double jeopardy and merger claims, the judgment of the court of appeals is affirmed.

**I.**

Gerald Dwayne Lewis was charged with multiple kidnapping and sexual-assault-relat-

ed offenses, as well as various counts of assault, burglary, theft, committing crimes of violence, and being an habitual criminal, all arising from three separate incidents, which extended over a two-week period and involved three different underage girls. In each instance, the defendant was accused of isolating his victim somewhere in a church or school; threatening, if not actually wounding, her with a knife or similar weapon; and using force to inflict vaginal or anal penetration on her. Notwithstanding his plea of not guilty by reason of insanity, the jury found twenty-four counts proven against him, and he was sentenced to more than 700 years of incarceration.

On direct appeal, the court of appeals affirmed all of the defendant's convictions and sentences. Among his assignments of error, the defendant challenged the validity of his separate convictions and sentences for both sexual assault and second degree kidnapping, where his kidnapping convictions were elevated from class four to class two felonies for the very reason that he sexually assaulted his kidnap victims. Although he acknowledged that this court had previously rejected identical challenges on the basis of double jeopardy and both judicial and statutory merger, he argued that subsequent holdings of the United States Supreme Court now require a different result. Although we denied the remainder of his petition for a writ of certiorari, we agreed to consider the limited question whether *People v. Henderson* should be overruled in light of the subsequent United States Supreme Court holdings in *Apprendi v. New Jersey* and *Blakely v. Washington*.

## II.

The Colorado General Assembly proscribes "Sexual assault" and "Kidnapping" in separate Parts of the Criminal Code. *See* Title 18, Art. 3, Parts 3 and 4. In different statutory sections within Part 3, the General Assembly also separately designates and defines the crimes of "First degree kidnapping," § 18–3–301, C.R.S. (2010), and "Second degree kidnapping," § 18–3–302. Second degree kidnapping is statutorily classified as a class four felony

unless it is accomplished in one of three specifically enumerated ways, any of which has the effect of elevating the offense to a class three felony, *see* § 18–3–302(4), or unless the kidnap victim is also subjected to either robbery or sexual assault, a circumstance which elevates the offense to a class two felony, *see* § 18–3–302(3). Whether second degree kidnapping is committed as a class two, three, or four felony, the crime of which the defendant stands convicted remains statutorily designated "Second degree kidnapping."

In *North Carolina v. Pearce,* the United States Supreme Court characterized the Double Jeopardy Clause of the Fifth Amendment as protecting individuals from prosecution after either an acquittal or conviction of the same offense, and in addition, from being subjected to multiple punishments for the same offense. 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In *Missouri v. Hunter,* however, the Court clarified this articulation of the constitutional protection, specifying that with respect to cumulative sentences imposed at a single proceeding the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. 459 U.S. 359, 366–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *see also Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). In 1986, this court acknowledged this clarification of Supreme Court double jeopardy jurisprudence and adopted it as the correct interpretation of Colorado's own constitutional jeopardy provision as well. *People v. Haymaker,* 716 P.2d 110, 116 (Colo.1986); *People v. Powell,* 716 P.2d 1096, 1104–05 (Colo.1986); *People v. Vigil,* 718 P.2d 496, 506 (Colo.1986). In the ensuing years, we have on numerous occasions reaffirmed this position with regard to multiple convictions and sentences at the same proceeding. *See, e.g., Armintrout v. People,* 864 P.2d 576, 578 n. 6 (Colo.1993); *People v. Garcia,* 940 P.2d 357, 361 (Colo. 1997); *People v. Leske,* 957 P.2d 1030, 1034–36 (Colo.1998); *Patton v. People,* 35 P.3d 124, 129 (Colo.2001); *Meads v. People,* 78 P.3d

290, 293 (Colo.2003); *People v. Abiodun,* 111 P.3d 462, 465 (Colo.2005).

In *Powell,* we considered the very statutory scheme at issue here and, in direct reliance on our reasoning in *Haymaker,* held that a defendant convicted of sexual assault and class-two-felony second degree kidnapping, under section 18–3–302(3), had not been subjected to unconstitutional double punishment. 716 P.2d at 1104. In that case, we found that by structuring sexual assault as a sentence enhancement factor rather than as an element of a greater kidnapping offense, the legislature left a conviction for second degree kidnapping independent of the sexual assault factor and, in doing so, expressed its intent to authorize conviction of second degree kidnapping as a class two felony on the basis of, rather than in place of, a related conviction for sexual assault. *Id.* at 1105.

In *Henderson,* we made clear that our holding in *Powell* applied equally to the rule of merger as understood in this jurisdiction. After reviewing the "variety of meanings" given the term "merger" and finding the common law doctrine of that name largely meaningless and abandoned in light of both constitutional and statutory developments, 810 P.2d at 1059; *see also Leske,* 957 P.2d at 1035, we concluded that modern usage of the term falls generally into two categories. On the one hand, we recognized the term's use as a rule of statutory interpretation in assessing whether the legislature intends to impose multiple punishments for a single act violating several statutes; and on the other, we noted its use in reference to that aspect of double jeopardy concerned with multiple punishments as the result of a single prosecution. *Henderson,* 810 P.2d at 1060. Although we at times referred to "judicial merger," or the "judicial rule of merger," *id.* at 1061 (quoting *Boulies v. People,* 770 P.2d 1274, 1278 (Colo.1989))[1], and relied on reasoning from pre-statute case law, we left no doubt that the requirement of merger, whatever its source, had consistently been analyzed in this jurisdiction under double jeopardy principles and that second degree

kidnapping involving sexual assault was not an offense separate and apart from second degree kidnapping, according to either statute or case law, *id.* at 1064, 1060 n. 6 (expressly construing § 18–1–408).

In subsequent cases, our analyses of merger have focused more expressly on the General Assembly's statutory treatment of multiple convictions and punishments for offenses charged in a single proceeding. *See, e.g., Armintrout,* 864 P.2d 576; *Garcia,* 940 P.2d 357; *Leske,* 957 P.2d 1030; *Meads,* 78 P.3d 290. Subsection (1) of section 18–1–408, C.R.S. (2010), provides that a defendant may not be convicted of more than one offense if one of the offenses in question is included in the other, and subsection (5) indicates that an offense is so included if, among other things, it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. To distinguish this formula from the included-offense tests of various other jurisdictions that take into account the actual pleadings or evidence in a particular case rather than merely comparing statutory elements, we have described it as the "statutory elements test," or "strict elements test," and have at times equated it with the standard articulated by the United States Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See Garcia,* 940 P.2d at 360; *Leske,* 957 P.2d at 1036–38; *Meads,* 78 P.3d at 294.

Under the included-offense standard of section 18–1–408, we have therefore consistently held that one offense is included within another if proof of facts establishing the statutory elements of the greater offense necessarily establishes all of the elements of the lesser offense. At the same time, in a variety of contexts, we have emphasized the significance of the legislature's choice to draft by structuring particular circumstances or conditions concerning the commission of a crime as factors enhancing its sentencing range rather than as elements of a new and greater offense. Whether the effect has been to permit multiple convictions, *e.g.,*

---

**1.** While Boulies's postconviction motion was not finally resolved by this court until 1989, the offenses of which he was convicted occurred in 1971, before the July 1, 1972 effective date of the Colorado Criminal Code. *Boulies,* 770 P.2d at 1276, 1282 n. 4.

*Henderson,* 810 P.2d 1058 or to prohibit them, *e.g., Armintrout,* 864 P.2d 576 (finding second degree burglary a lesser-included offense of first degree burglary by categorizing its additional "dwelling" requirement as a sentencing factor rather than an element not found in the greater first degree offense); *cf. Garcia,* 940 P.2d 357 (reaffirming *Armintrout* but permitting the prosecution an instruction on the non-included offense of first degree trespass because the defendant had actual notice of the additional "dwelling" sentencing factor of second degree burglary), we have consistently found the legislature's use of sentence enhancement factors to be a drafting technique for differentiating gradations in punishment within a particular "offense," without creating a new and different "offense" within the meaning of section 408. We have therefore found the legislature's choice to enhance only the penalty range for a particular offense as the result of the defendant's commission of a separate offense to be an expression of legislative intent that the elements of the two offenses remain distinct and unaffected by the merger provisions of section 408(1) and (5)(a).

## III.

That the legislature's use of this drafting technique evidenced an intent to distinguish the elements of sexual assault from those of class-two-felony second degree kidnapping, and to specifically authorize punishment for both, was less than self-evident at the time of *Henderson.* Despite the dissent of three Justices, however, the majority's interpretation has remained the law of the jurisdiction for two decades, not only with regard to the relationship between sexual assault and kidnapping, in particular, but also with regard to the distinction between elements and sentencing factors generally. The merits of our statutory interpretation in *Henderson* are not directly at issue here. Instead, the defendant asserts that subsequent decisions by the United States Supreme Court have undermined both the jeopardy and merger rationales of *Henderson* and have effectively overruled its holding concerning the permissibility of cumulative punishments.

In a line of cases beginning with *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and including *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court held that the Sixth Amendment entitles a criminal defendant to have any fact that increases his penalty beyond the prescribed statutory maximum for the offense of which he stands convicted, other than a prior conviction, submitted to a jury and proved beyond a reasonable doubt. In arriving at this formulation, the Court made clear that for purposes of the Sixth Amendment guarantee of jury determinations, it is inconsequential whether a required fact is organized in a particular statutory proscription as a sentencing factor or as an element because in this context any factor that increases the defendant's sentence beyond the statutory maximum for his offense operates as the "functional equivalent" of an element of a greater offense. *Apprendi,* 530 U.S. at 494 n. 19, 120 S.Ct. 2348. In this jurisdiction, we have interpreted and applied this line of cases to require jury findings for certain aggravated sentencing, *see Lopez v. People,* 113 P.3d 713, 726 (Colo.2005), and, in fact, to categorize as fundamental a criminal defendant's right to a jury determination of these kinds of sentence-enhancing factors, making them waivable only knowingly, voluntarily, and intelligently, just as the elements of an offense themselves, *People v. Isaacks,* 133 P.3d 1190, 1194 (Colo.2006).

Subsequently, in *Sattazahn v. Pennsylvania,* despite finding the matter inapplicable to the hung jury situation actually facing them, three Justices opined that there would be "no principled reason to distinguish, in this context, between what constitutes an offense for purposes of the Sixth Amendment's jury-trial guarantee and what constitutes an 'offense' for purpose of the Fifth Amendment's Double Jeopardy Clause." 537 U.S. 101, 111, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003). Even assuming that this comment were at some point to gain the support of a majority of the Court, and were to actually control the outcome of a case, it could nevertheless have no impact on the question before us today. The context as to which these three Justices opined was that

of a second trial-like capital sentencing proceeding, following an earlier jury finding that the prosecution had failed to prove any capital aggravating factor. In suggesting the equal applicability of *Apprendi* to the Double Jeopardy Clause, this comment can therefore be reasonably understood to refer at most to the sequential prosecutions properly the subject of the Double Jeopardy Clause. The three opining Justices neither suggested a modification of, nor even addressed, the Court's separate treatment of multiple punishments imposed in a single proceeding.

Whether or not offenses are the same for purposes of the separation-of-powers concern included in the Double Jeopardy Clause, however, separate convictions and punishments at a single proceeding that are specifically authorized by the legislature never run afoul of constitutional jeopardy protections. *Hunter*, 459 U.S. 359, 367–69, 103 S.Ct. 673, 74 L.Ed.2d 535. It is for the courts of a state to construe the statutes of that state and determine whether the state legislature has authorized cumulative punishments for violations of two statutes defining the same crime. *Id.* And in that regard, the Supreme Court has held itself bound by a state court's construction of its own state statutes. *Id.* at 368, 103 S.Ct. 673. Therefore, whatever the Supreme Court may ultimately conclude about included offenses for jeopardy purposes, that determination can impact the constitutionality of the defendant's multiple convictions and sentences only to the extent that it persuades this court to reconsider the intent of the Colorado General Assembly in choosing to draft as it has.

With regard to the related question whether even multiple convictions and punishments that could be *constitutionally* imposed may, under some circumstances, nevertheless be prohibited in this jurisdiction, the General Assembly has spoken. Because section 408 bars, without exception, the conviction of both a greater and its lesser-included offense, the precise question for purposes of the defendant's statutory merger challenge must be whether the particular sexual assault offense of which he stands convicted is included in the particular offense of second degree kidnapping of which he has been si-

multaneously convicted. As distinguished from double jeopardy, where specific legislative authorization is sufficient to justify multiple punishments for even a single offense, section 408 only permits separate convictions of offenses defined in such a way that neither is included within the other. As we implicitly recognized in *Henderson*, however, to the extent that multiple convictions and punishments are authorized by section 408 unless they fall within one of its prohibitions, the inquiries are indistinguishable.

Because the General Assembly's separate statutory limitation on multiple convictions is self-imposed, the nature and extent of that limitation is necessarily dependent upon a reasonable understanding of the terms in which the legislature has chosen to define it. Integral to our construction of section 408 as mandating the merger of offenses according to a strict comparison of their "elements" has always been our distinction between those conditions or circumstances necessary for conviction of a statutorily designated offense and those conditions or circumstances that merely increase the penalty range for conviction of that offense. This interpretation of the statutory merger standard, which we have consistently referred to as the "strict elements test," has, for at least a quarter of a century, represented our construction of section 408(1) and (5)(a).

While we have also equated this test with the "Blockburger test," doing so has clearly reflected our understanding, at the time, of the standard articulated by the Supreme Court in *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180. We have never implied that section 408 expresses a legislative intent to adopt the federal constitutional jeopardy standard, however that standard may be construed at some future time. On the contrary, should the Supreme Court at some point actually modify the *Blockburger* test or explain it as having a meaning different from our construction of section 408's "strict elements test," the appropriate course of action for us to take would be to concede error in equating the two rather than nullify well-founded drafting choices of the General Assembly.

Similarly, we have in the past relied on case law predating the enactment of section 18–1–408 for the proposition that double jeopardy and merger seek the same end and that the rule of merger is based on double jeopardy principles. *See, e.g., Henderson,* 810 P.2d at 1061 (quoting *Boulies,* 770 P.2d at 1278–82). In doing so, however, we have simultaneously made clear our awareness that, with regard to multiple simultaneous punishments, the constitutional prohibition against twice placing a defendant in jeopardy for the same offense is concerned only with ensuring that his punishment not exceed legislative authorization, regardless of the constitutional standard for equating offenses. Whatever else we may have intended, before the legislature chose to speak on the matter, we have clearly never implied that the intent of the Colorado General Assembly in using specific terms must be construed according to federal constitutional interpretations of those same terms. We therefore decline the defendant's invitation to ignore altogether the separation-of-powers component of the Double Jeopardy Clause and give the statutory term "offense" a meaning that would not only be inconsistent with well-accepted drafting conventions in this jurisdiction but even a complete double jeopardy analysis.

It is far from clear that the functional equivalence of elements and sentencing factors for purposes of a criminal defendant's right to a jury trial should apply equally to the constitutional presumption against multiple simultaneous punishments for the same offense. Even if it did, however, that functional equivalence could not alter the fact that the constitutional presumption is overcome by specific legislative authorization or that the question of legislative intent must remain a function of existing drafting conventions and rules of construction. Nothing in the Supreme Court's recent Fifth or Sixth Amendment interpretations, therefore, undermines our prior determination that legislative reliance on a distinction between elements and sentencing factors evidences an intent to avoid the creation of a new offense of second degree kidnapping involving sexual assault, into which the lesser offense of sexual assault could then merge.

## IV.

The judgment of the court of appeals sustaining the defendant's convictions and sentences for three counts of class-two-felony second degree kidnapping as well as three counts of sexual assault is therefore affirmed.