J-E01005-15

2015 PA Super 226

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LEE ALLEN KIMMEL, | |
| Appellant | No. 126 MDA 2013 |

Appeal from the Judgment of Sentence entered December 18, 2012
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0003380-2011.

BEFORE: BOWES, DONOHUE, SHOGAN, LAZARUS, MUNDY, OLSON, WECHT, STABILE AND JENKINS, JJ.

CONCURRING OPINION BY OLSON, J.:                    **FILED OCTOBER 29, 2015**

I agree with the learned majority that Appellant's convictions do not merge. I do so, however, for a different reason. Unlike the learned majority, in my view, Appellant was charged with committing a single criminal act. Nonetheless, all of the statutory elements of driving under the influence (DUI) are not included in F3-fleeing. Accordingly, I concur only in the learned majority's judgment.

The majority succinctly summarized 42 Pa.C.S.A. § 9765. **Majority Opinion** at 8. I thus proceed directly to considering whether Appellant was charged with committing a single criminal act or multiple criminal acts. As noted by the learned majority, **Commonwealth v. Jenkins,** 96 A.3d 1055 (Pa. Super. 2014), appeal denied, 104 A.3d 3 (Pa. 2014), explains when a single criminal act occurs for purposes of the merger statute. Under

J-E01005-15

*Jenkins*, this Court must "look to the elements of the crimes involved **as charged by the Commonwealth.**" *Id.* at 1060 (emphasis added). In *Jenkins*, a panel of this Court held that simple assault did not merge with robbery where the criminal information set forth detailed facts and expressly charged the defendant with assault arising from a punch that lacerated the victim's fact and broke his jaw, and a robbery that stemmed from a wholly separate and distinct act of restraining the victim on the ground in order to steal his personal belongings. *Id.* at 1061. Unlike the information in *Jenkins*, the criminal information in this case, which is notably absent from the majority's analysis, does not set forth **any** facts and fails to make this clear delineation between the alleged criminal acts. Thus, I cannot conclude that Appellant was charged by the Commonwealth for separate criminal acts.

In reviewing the criminal information filed against Appellant, it is evident that the Commonwealth merely copied and pasted the text of the relevant criminal statutes without alleging **any** operative facts that formed the basis for each charge.[1] There are **no** specific allegations in the

---

[1] Specifically, the criminal information filed against Appellant reads in pertinent part as follows:

> THE DISTRICT ATTORNEY OF CUMBERLAND COUNTY, by this information charges that on or about **Tuesday, the 22nd day of November, 2011**, in the said County of Cumberland, LEE ALLEN KIMMEL, did:
>
> **COUNT 1:**
> **Fleeing or Attempting to Elude Police Officer**

*(Footnote Continued Next Page)*

- 2 -

information, akin to **Jenkins**, which demonstrate conclusively that Appellant was charged with separate criminal acts. Thus, I cannot separate Appellant's conduct in driving while intoxicated from his choice to flee from the police. Recall **Jenkins**, in which this Court held that the defendant's

*(Footnote Continued)* ———————————

**(F3 -- $15,000 – 7 Years)**
while operating a motor vehicle, willfully fail or refuse to bring his/her vehicle to a stop, or did otherwise flee or attempt to elude a pursuing police vehicle with activated visual and audible signals; or while operating a motor vehicle, willfully fail or refuse to bring his/her vehicle to a stop, or did otherwise flee to attempt to elude a pursuing police vehicle with activated visual and audible signals and (i) commit a violation of Section 3802, (ii) cross state line; or (iii) endanger a law enforcement officer or member of the general public due to the driver engaging in a high speed chase. A violation of this section carries a mandatory fine of $500.00 in addition to and not in lieu of any other fines and costs[.]

**COUNT 2:**
**Driving Under the Influence, General Impairment (3rd or Sub.)**
**(M2 -- $500.00 – 10 Days-2 Years)**
drive, operate, or be in actual physical control of the movement of a vehicle after imbibing enough alcohol to render said person incapable of safely driving, operating, or being in actual physical control of the movement of the vehicle.

**COUNT 3:**
**Driving Under the Influence, General Impairment With Refusal (3rd or Sub.)**
**(M1 -- $2,500.00 -- $10,000.00 – 1 Year – 5 Years)**
drive, operate, or be in actual physical control of the movement of a vehicle after imbibing enough alcohol to render said person incapable of safely driving, operating or being in actual physical control of the movement of the vehicle and did refuse to provide a sample of breath or blood for chemical testing. …

Information, 2/1/12, at 1 (emphasis in original).

convictions arose from distinct criminal acts because separate conduct formed the basis of the charges leveled in the information. Here, in contrast, Appellant was driving while intoxicated and fled from the police. The information charged generically that Appellant committed DUI and fleeing, without specifying when the crimes occurred. However, it is clear that Appellant's post-stop actions constituted both a DUI (because Appellant operated his vehicle while intoxicated) **and** fleeing (because Appellant departed from a signaled police detention). Because of the generic nature of the allegations set forth in the information, I cannot say with certainty, as this Court could in **Jenkins**, that there were two separate criminal acts.

The learned majority relies on the conclusion that "there was [an] initial DUI, followed by a stop, followed by Appellant choosing to flee while DUI," **Majority Opinion** at 9, and the subsequent assertion that the Commonwealth charged Appellant with committing DUI and a separate felony fleeing offense that occurred after the initial traffic stop. **Id.** at 9-10. In reviewing the information in this case, the total lack of facts prevents me from concluding that Appellant was charged with a DUI, followed by a stop, followed by a charge for fleeing while DUI. Nor can I say with certainty that the jury necessarily found this version of the events proven beyond a reasonable doubt. In the absence of precise allegations (similar to those in **Jenkins**) asserting that Appellant's DUI offense arose from his pre-stop operation of a motor vehicle, it is just as conceivable that the

Commonwealth charged Appellant with DUI, and fleeing while DUI, based entirely on his conduct following the traffic stop by Officer Beltz. Thus, I cannot conclude, as the learned majority would suggest, that Appellant was charged with and convicted of DUI relating solely to events that occurred before the traffic stop. Thus, I must conclude that Appellant's convictions arose from a single criminal act.

Having determined that Appellant was charged with a single criminal act, I turn to whether the statutory elements of DUI are included within the statutory elements of F3-fleeing.[2] In order to determine whether the statutory elements of DUI are included in the statutory elements of F3-fleeing, I must ascertain the meaning of "statutory elements" as used in section 9765. The Commonwealth contends that statutory elements are limited to those elements listed in the definition of an offense. Other elements or factors, the Commonwealth maintains, such as those that solely affect grading, are not statutory elements within the meaning of section 9765. Appellant, on the other hand, argues that all factors that are included in a criminal statute, including factors used in determining the grading of an offense, constitute statutory elements.

"When interpreting a statute, [this Court is] guided by the Statutory Construction Act," 1 Pa.C.S.A. § 1501 *et seq*. **W.C.F. v. M.G.**, 115 A.3d

---

[2] The majority outlined the statutory provisions relating to DUI and F3-fleeing. **Majority Opinion** at 7-8.

323, 333 n.1 (Pa. Super. 2015). This Court's "paramount interpretative task is to give effect to the intent of [the] General Assembly in enacting the particular legislation under review." ***Commonwealth v. Schultz***, 116 A.3d 1116, 1120 (Pa. Super. 2015) (internal quotation marks and citation omitted). "Generally, the best indication of the General Assembly's intent may be found in the plain language of the statute. In this regard, it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." ***Commonwealth v. Devries***, 112 A.3d 663, 670 (Pa. Super. 2015) (internal quotation marks and citations omitted).

In ascertaining the General Assembly's intent when the words of a statute are ambiguous, this Court may consider, *inter alia*, the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, and the former law concerning the same subject. 1 Pa.C.S.A. § 1921(c)(1-5). This Court presumes that in enacting statutes, "the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth." 1 Pa.C.S.A. § 1922(3). This Court also presumes that in enacting statutes "the General Assembly does not intend a result that is absurd, impossible of execution[,] or unreasonable." 1 Pa.C.S.A. § 1922(1).

The Sentencing Code (in which section 9765 is found) does not define the term "statutory elements."[3] Although it is clear that in order to be a statutory element, the element must be included in the Pennsylvania Consolidated Statutes or the Pennsylvania Statutes, it is unclear exactly where in the statute an element must appear in order to be deemed a statutory element within the meaning of section 9765. In the absence of a clear and precise legislative pronouncement on this point, I conclude that

---

[3] The Crimes Code, however, defines the term "element of an offense" as

> Such conduct or such attendant circumstances or such a result of conduct as:
>
> (1) is included in the description of the forbidden conduct in the definition of the offense;
>
> (2) establishes the required kind of culpability;
>
> (3) negatives an excuse or justification for such conduct;
>
> (4) negatives a defense under the statute of limitation; or
>
> (5) establishes jurisdiction or venue.

18 Pa.C.S.A. § 103. The Crimes Code also defines "material element of an offense" as

> An element that does not relate exclusively to the statute of limitations, jurisdiction, venue or to any other matter similarly unconnected with:
>
> (1) the harm or evil incident to conduct, sought to be prevented by the law defining the offense; or
>
> (2) the existence of a justification or excuse for such conduct.

*Id.*

the term "statutory elements" as used in section 9765 is ambiguous. As there is no unambiguous meaning to the term "statutory elements", I turn to other tools of statutory interpretation to ascertain its meaning.

I begin with the development of Pennsylvania jurisprudence on merger, both before and after the passage of section 9765, to illuminate my understanding of the statute. The legislature passed section 9765 in December 2002 and it became effective in February 2003. *See* 2002 P.L. 1705. Prior to the enactment of section 9765, the history of merger jurisprudence in this Commonwealth was long and discordant.

Generally, there are three approaches to merger analysis. The first of these is the "pure statutory elements" approach. This approach, which began at common law, "limits a court to comparing the elements of the crimes, without reference to how the crimes were committed in a particular case, to determine whether in committing one offense the defendant has also committed a lesser offense." ***Commonwealth v. Jones***, 912 A.2d 815, 817 (Pa. 2006) (Castille, J. opinion announcing the judgment of the court) (citation omitted). The pure statutory elements approach involves a more restrictive analysis and results in the fewest instances of merger. A second merger theory is the "cognate-pleadings" approach. This approach "does not require that all of the elements of a lesser included offense be subsumed within the higher offense, and instead instructs a court to assess the relationship between crimes by looking at the pleadings in a case." ***Id.***

at 817-818 (citation omitted). Finally, the "evidentiary" approach "allows a court to analyze the actual proof submitted at trial, rather than only the pleadings, to examine the relationship between the crimes committed." *Id.* at 818 (citation omitted).

The doctrine of merger in this Commonwealth dates to at least 1824. In *Harman v. Commonwealth*, 12 Serg. & Rawle 69 (Pa. 1824), the Pennsylvania Supreme Court held that the crime of assault and battery with intent to ravish merged with rape. In *Harman*, the Court applied what we know today as the pure statutory elements approach, as it reasoned that the defendant was necessarily guilty of assault and battery with intent to ravish if he were guilty of rape. More recently, in *Commonwealth v. Williams*, 496 A.2d 31 (Pa. Super. 1985), this Court reviewed the state of the merger doctrine in Pennsylvania. By this time, Pennsylvania followed a hybrid approach that combined the pure statutory elements approach and the evidentiary approach. *See id.* at 40. A few years later, the Pennsylvania Supreme Court issued contradictory decisions in *Commonwealth v. Williams*, 559 A.2d 25 (Pa. 1989), and *Commonwealth v. Weakland*, 555 A.2d 1228 (Pa. 1989). In *Williams*, the Pennsylvania Supreme Court applied the pure statutory elements approach. *Williams*, 559 A.2d at 29. On the other hand, in *Weakland*, the Court applied a hybrid approach combining the pure statutory elements approach and the evidentiary approach. *Weakland*, 555 A.2d at 1233.

The Pennsylvania Supreme Court later acknowledged that **Williams** and **Weakland** could not be reconciled. In **Commonwealth v. Anderson**, 650 A.2d 20 (Pa. 1994), the Pennsylvania Supreme Court overruled **Weakland** and adopted the pure statutory elements approach advanced in **Williams**. **See id.** at 22-23. **Anderson** remained the law of this Commonwealth with respect to merger until the passage of section 9765 by the General Assembly.

In 2006, the Pennsylvania Supreme Court addressed the issue of merger for the first time following the passage of section 9765. In **Jones**, Chief Justice Cappy and Justices Castille and Baer construed section 9765 as employing a hybrid approach that blended the pure statutory elements approach with the cognate-pleadings approach. **Jones**, 912 A.2d at 822-824. Justices Saylor, Newman, and Eakin disagreed and construed section 9765 to require a pure statutory elements approach. **Id.** at 825 (Saylor, J. concurring); **id.** at 826 (Newman, J. dissenting). Because no construction of section 9765 garnered a majority of the **Jones** Court, the decision lacked precedential force beyond the parties to that dispute. **See Commonwealth v. Holmes**, 79 A.3d 562, 575 n.8 (Pa. 2013) ("A decision of th[e Pennsylvania Supreme] Court has binding effect [only] if a majority of the participating Justices joined the opinion."). Subsequently, however, in **Commonwealth v. Baldwin**, 985 A.2d 830 (Pa. 2009), the Pennsylvania Supreme Court rejected the hybrid approach followed in **Jones** and instead

interpreted section 9765 as a pure statutory elements approach to merger. *Id.* at 835. In so holding, the Court noted that the General Assembly's adoption of section 9765 was a codification of the approach taken in *Anderson*.[4] *See id.*

*Baldwin*'s construction of section 9765 as a pure statutory elements approach to merger, together with its declaration that section 9765 codified *Anderson*, are instructive in construing the term "statutory elements" in this case. As a preliminary matter, the Pennsylvania Supreme Court in *Anderson* held that the pure statutory elements approach to merger "ultimately[] is identical to the inquiry as to whether the double jeopardy protection of the Fifth Amendment has been violated." *Anderson*, 650 A.2d at 23. The seminal case on double jeopardy (as it relates to multiple punishments arising from a single criminal act) is *Blockburger v. United States*, 284 U.S. 299 (1932). In *Blockburger*, the Supreme Court of the United States explained that "where the same act or transaction constitutes

---

[4] *Anderson* not only adopted and applied the pure statutory elements test for merger, the decision also discussed the underlying purpose of a narrow merger rule. The Pennsylvania Supreme Court explained that a narrow approach to merger prevented criminals from obtaining a volume discount on crime. *Anderson*, 650 A.2d at 22. In the absence of a narrow merger rule, the Court reasoned that there would be no deterrent against a robber's violent assault upon a victim during a robbery because the aggravated assault conviction would merge with the robbery conviction. *See id.* Since the Pennsylvania Supreme Court in *Baldwin* determined that section 9765 represented a codification of the approach used in *Anderson*, we infer that the General Assembly also sought to advance the goal of preventing volume discounts on crime through its adoption of the merger statute.

a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 302. It later clarified, however, "that the **Blockburger** test applies only in the multiple punishment context as a rule of statutory construction, to be utilized only when the legislature has not indicated whether punishment for separate offenses is cumulative." **Baldwin**, 985 A.2d at 836, *citing* **Whalen v. United States**, 445 U.S. 684, 691-692 (1980). In other words, "the question of what punishments are constitutionally permissible is not different from the question of what punishments the [General Assembly] intended to be imposed." **Albernaz v. United States**, 450 U.S. 333, 344 (1981). Therefore, when the General Assembly "specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under **Blockburger**, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court [] may impose cumulative punishment under such statutes in a single trial." **Missouri v. Hunter**, 459 U.S. 359, 368–369 (1983).

Applying these principles to the case *sub judice*, I conclude that the relevant statutory provisions authorize separate punishments for DUI and F3-fleeing. In formulating the statutory prohibition against fleeing, the General Assembly referred to DUI only in the grading section of the fleeing statute, not in the definition portion of the statute. The location of the

reference to a DUI offense reflects the legislature's intent to create a single offense of fleeing, which is then graded, and punished, more harshly based upon the circumstances surrounding the fleeing. This, in turn, reflects a legislative choice to impose cumulative punishment for DUI and F3-fleeing. To hold otherwise, and conclude that the offenses merge because a reference to DUI appears in the grading provision of the fleeing statute, would frustrate the legislature's intent to enhance punishment for fleeing where the fleeing occurs at the same time as a DUI offense. Indeed, to treat, for purposes of merger, grading factors[5] in the same manner as factors found in the definition of an offense would deprive the legislature of any mechanism whatsoever by which to signal its approval of multiple punishments. Under these circumstances, it is constitutionally permissible to construe section 9765 narrowly so as to exclude grading factors from the definition of statutory elements. *See also Commonwealth v. Wade*, 33 A.3d 108, 121 (Pa. Super. 2011), *appeal denied*, 51 A.3d 839 (Pa. 2012) (section 9765 does not violate the Pennsylvania Constitution's prohibition against double jeopardy).

Appellant's merger claim rejects the foregoing analysis based upon recent decisions involving the right to a trial by jury under the Sixth

---

[5] To be clear, I employ the term "grading factor" to refer to a fact that affects the grading of an offense but is not included in the definition of an offense.

Amendment to the United States Constitution and his contention as to how those cases impact the interpretation and application of section 9765. I therefore clarify both the basis and scope of Appellant's position insofar as it relates to the merits of this appeal. Initially, I note that Appellant makes no claim that the trial court violated his Sixth Amendment right to a jury trial on the charges of DUI or F3-fleeing. The record is clear that a jury of Appellant's peers determined beyond a reasonable doubt that Appellant committed both DUI and fleeing and that he refused chemical testing. Instead, Appellant's precise claim is that, because Sixth Amendment cases such as ***Apprendi v. New Jersey***, 530 U.S. 466 (2000)[6] and its progeny have eroded the distinction between the concepts of elements of an offense, which are found in the definition of a crime, and factors relevant to sentencing or grading, the reference to DUI in the grading provision of the fleeing statute requires merger of the two offenses. ***See*** Appellant's Substitute Brief at 14 (since ***Apprendi*** holds that "an element of an offense is any fact which the jury must find beyond a reasonable doubt in order to convict the defendant," there is no distinction between an element of an offense and a grading factor). This claim stretches the logic of ***Apprendi*** too far.

---

[6] In ***Apprendi***, the Supreme Court of the United States held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." ***Apprendi***, 530 U.S. at 490.

Although I have been unable to locate any Pennsylvania cases that address the merits of Appellant's claim, I have uncovered persuasive authority emanating from a sister state that discusses merger in a situation nearly identical to this case. Like Appellant, the defendant in that case relied upon *Apprendi* to assert that a reference to one offense in the grading provision of another offense required merger of the two crimes at sentencing. In *Lewis v. Colorado*, 261 P.3d 480 (Colo. 2011), the defendant was convicted of sexual assault and kidnapping. *Id.* at 480. Under Colorado law, when a victim is sexually assaulted during the course of a kidnapping, the grading of the kidnapping is elevated to a class-two felony. *Id.* Therefore, at sentencing, the defendant was sentenced on both the class-two felony kidnapping charge as well as the sexual assault charge. On appeal, the defendant argued that this violated the double jeopardy clause in light of *Apprendi* because the sexual assault was an element of the class-two felony kidnapping. The Supreme Court of Colorado rejected the defendant's argument and held that class-two felony kidnapping and sexual assault did not merge for sentencing purposes.[7] It reasoned:

> It is far from clear that the functional equivalence of elements [of a crime] and [grading] factors for purposes of a criminal defendant's right to a jury trial should apply equally to the constitutional presumption against multiple simultaneous punishments for the same offense. Even if it did, however, that

---

[7] Like Pennsylvania, Colorado follows the pure statutory elements approach to merger that is coextensive with the double jeopardy clause of the Fifth Amendment. *Lewis*, 261 P.3d at 482.

> functional equivalence could not alter the fact that the constitutional presumption is overcome by specific legislative authorization or that the question of legislative intent must remain a function of existing drafting conventions and rules of construction. Nothing in the Supreme Court [of the United States'] recent Fifth or Sixth Amendment interpretations, therefore, undermines our prior determination that legislative reliance on a distinction between elements [of a crime] and [grading] factors evidences an intent to avoid the creation of a new offense of second degree kidnapping involving sexual assault, into which the lesser offense of sexual assault could then merge.

*Lewis*, 261 P.3d at 485.

I agree with the rationale set forth in *Lewis*. This holding illustrates a significant point that Appellant overlooks in his effort to extend *Apprendi* and its progeny beyond the Sixth Amendment context and into the Fifth Amendment arena, where the legislature enjoys substantially greater authority. Whether a defendant has the right to have a jury determine a fact beyond a reasonable doubt is a separate and distinct inquiry from whether a grading factor compels merger. The former is determined by the Sixth Amendment and, pursuant to recent decisions interpreting the right to a jury trial, the General Assembly lacks authority to redefine the scope of that right by characterizing facts as elements of the crime, grading factors, or sentencing factors. *See*, *e.g.*, *Apprendi*, 530 U.S. at 490. On the other hand, the double jeopardy protection of the Fifth Amendment governs the scope of merger and the General Assembly possesses the authority to direct the imposition of cumulative punishments where the relevant criminal statutes reflect that intent. I conclude that the reference to DUI in the

grading portion of the fleeing statute, and its exclusion from the definition section of that provision, reflect the legislature's intent to authorize cumulative punishments and to foreclose merger of the offenses in this case. Hence, Appellant's **Apprendi**-based merger claim merits no relief.

My construction of the term "statutory elements" also parallels the Pennsylvania Supreme Court's treatment of the doctrine of merger as it relates to first-degree murder and second-degree murder. When the Commonwealth seeks the death penalty, one of the aggravating circumstances that a jury can find is that the defendant committed the murder during the course of another felony. 42 Pa.C.S.A. § 9711(d)(6). The law deems this factor an element of the offense for purposes of **Apprendi** because it increases the maximum punishment from life imprisonment to death. **See Ring v. Arizona**, 536 U.S. 584, 607 (2002). Despite this well-settled precedent, the Pennsylvania Supreme Court routinely affirms judgments of sentence in which the defendant is sentenced to a term of imprisonment **consecutive** to the death penalty for the same aggravating felony that was treated as an element of the offense under **Apprendi**. **E.g.**, **Commonwealth v. Stollar**, 84 A.3d 635 (Pa. 2014); **Commonwealth v. Mattison**, 82 A.3d 386 (Pa. 2013); **Commonwealth v. Mitchell**, 902 A.2d 430 (Pa. 2006). An aggravating underlying felony does not merge with a conviction for first-degree murder – death penalty eligible because the underlying felony is merely a grading factor for that offense.

*See* 18 Pa.C.S.A. § 2502(a); 42 Pa.C.S.A. § 9711(d)(6). Under Appellant's construction of the term "statutory elements," these unmerged sentences would be illegal since the underlying felony is a statutory element of first-degree murder – death penalty eligible. The Pennsylvania Supreme Court, however, consistently affirms such sentences; therefore, these punishments are constitutionally sound.

This treatment stands in stark contrast to the interplay between a second-degree murder conviction and a related, underlying felony. In Pennsylvania, it is well-settled in such cases that the underlying felony merges with the second-degree murder conviction for purposes of sentencing. ***Commonwealth v. Adams***, 39 A.3d 310, 325 (Pa. Super. 2012), *aff'd*, 104 A.3d 511 (Pa. 2014), *citing* ***Commonwealth v. Harper***, 516 A.2d 319, 321 (Pa. 1986). This is so because the underlying felony is included within the definition of second-degree murder. 18 Pa.C.S.A. § 2502(b) ("A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony."). The distinct treatment of underlying felonies in the context of first- and second-degree murder cases sheds light on how the inclusion of the underlying felony affects my merger analysis. The inclusion of an underlying felony within the definition of second-degree murder permits merger because the felony constitutes a statutory element of that offense. Whereas, inclusion of the underlying

felony in the grading provisions for first-degree murder negates merger since the felony does not qualify as a statutory element of that crime.

My assessment of other statutory construction guides, including the mischief which legislation seeks to remedy and the preference to avoid absurd results, also supports my conclusion that the term "statutory elements" does not include factors that solely impact the grading of an offense. In the case at bar, the General Assembly enacted the DUI statute to prevent drunk drivers from terrorizing our roads. In contrast, the legislature passed the fleeing statute to reinforce citizen respect for the authority of a police stop. The respective statutes address highly distinct forms of conduct and have little area of overlap, thereby indicating that the General Assembly intended for DUI to be sentenced separately from F3-fleeing.

Furthermore, merging Appellant's DUI conviction with his F3-fleeing conviction, on grounds that DUI constituted a statutory element of F3-fleeing, would bring about an absurd result. In section 9765, the General Assembly provided that, when two offenses merge, a defendant must be sentenced on the higher-graded offense. In this case, that would be the F3-fleeing. Under the circumstances of this case, however, there is no mandatory minimum sentence for F3-fleeing while there is a mandatory minimum sentence for DUI. It is unreasonable to presume that the General Assembly intended to *de facto* eliminate an applicable mandatory minimum

sentence for DUI when an individual is also convicted of F3-fleeing. To do so would not only create a volume discount on crime, it would incentivize drunk drivers to flee police in order to avoid mandatory minimum sentences that may attach to their DUI convictions. Moreover, I repeat that if, in passing upon the merger of two offenses, I were to treat grading factors as if they were included in the definition section of a crime, the legislature would have no mechanism by which to authorize multiple punishments. This is an unreasonable construction of section 9765.

For the foregoing reasons, I conclude that the term "statutory elements" as used in section 9765 excludes factors that solely impact the grading of an offense. The circumstances under which section 9765 was enacted, the former law concerning the subject matter, the occasion and necessity for the statute, the object to be attained, and the preference for avoiding absurd results support this determination. Accordingly, Appellant's claim that his convictions should merge because DUI appears as a grading factor for F3-fleeing lacks merit.

I now consider the rationale of the prior three-judge panel that initially granted relief. The majority of the three-judge panel relied upon *Commonwealth v. Tanner*, 61 A.3d 1043 (Pa. Super. 2013), to support its conclusion that DUI and F3-fleeing merge for sentencing.[8] In *Tanner*, a

---

[8] One original panel member dissented from that portion of the majority's opinion.

decision that I authored, this Court held that DUI-highest rate of alcohol, 75 Pa.C.S.A. § 3802(c) (prohibiting operation of vehicle where alcohol concentration in an individual's blood or breath is 0.16% or higher), merged with (1) homicide by motor vehicle while DUI, and (2) aggravated assault by vehicle while DUI. *Tanner*, 61 A.3d at 1047-1048. In so doing, this Court held that DUI (a lesser included offense of DUI-highest rate of alcohol) was a statutory element of both (1) homicide by motor vehicle while DUI, and (2) aggravated assault by vehicle while DUI. *See id. Tanner*, however, is distinguishable from the case at bar.

Homicide by motor vehicle while DUI is defined as:

(a) Offense defined.—Any person who unintentionally causes the death of another person **as the result of a violation of [75 Pa.C.S.A. §] 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802** is guilty of a felony of the second degree when the violation is the cause of death and the sentencing court shall order the person to serve a minimum term of imprisonment of not less than three years. A consecutive three-year term of imprisonment shall be imposed for each victim whose death is the result of the violation of section 3802.

75 Pa.C.S.A. § 3735(a) (emphasis added).

Aggravated assault by vehicle while DUI is defined as:

(a) Offense defined.—Any person who negligently causes serious bodily injury to another person **as the result of a violation of [75 Pa.C.S.A. §] 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802** commits a felony of the second degree when the violation is the cause of the injury.

75 Pa.C.S.A. § 3735.1(a) (emphasis added).

From the foregoing provisions, it is immediately evident that DUI is included in the "offense defined" portion of the statutes that criminalize homicide by motor vehicle while DUI, and aggravated assault by vehicle while DUI. In other words, the General Assembly created separate offenses which include DUI as an element of the offense, as that term is defined in the Crimes Code. As noted by this Court in *Commonwealth v. Schmohl*, 975 A.2d 1144 (Pa. Super. 2009), this was the reason the offenses merged. *Id.* at 1150 (citation and internal alteration omitted) ("The definition of [aggravated assault by vehicle while DUI] expressly incorporates the commission of the offense of DUI and conviction thereof as one of its elements."). The General Assembly did not merely change the grading of homicide by motor vehicle based upon the fact that the crime was committed while driving under the influence. The same is true with respect to aggravated assault by vehicle while DUI. Reading these statutes in conjunction with the pure statutory elements approach to merger that is incorporated into section 9765, I am persuaded that these statutes evidence the General Assembly's intent to avoid multiple punishments for both DUI and either homicide by motor vehicle while DUI or aggravated assault by vehicle while DUI, as the circumstances warrant. By including DUI in the definition section of the respective statutes, the General Assembly expressed its intent that a DUI conviction should merge for sentencing purposes.

When properly viewed, **Tanner** supports my conclusion that the term "statutory elements" does not include grading factors.

For all of these reasons, I would hold that the term "statutory elements" in section 9765 means such conduct or such attendant circumstances or such a result of conduct as is included in the description of the forbidden conduct in the definition of the offense or establishes the required kind of culpability. This definition does not include grading factors. Applying this definition to the case *sub judice*, I conclude that DUI is not a statutory element of F3-fleeing. Instead, it is merely a factor that increases the grading of a fleeing conviction from an M2 to an F3. Although this grading factor must be found by a jury beyond a reasonable doubt, it is not a statutory element for purposes of section 9765.

In sum, I would hold that Appellant committed one solitary criminal act under **Jenkins**. I would further hold that the statutory elements of DUI are not included within the statutory elements of F3-fleeing. Therefore, I agree with the learned majority that Appellant's convictions do not merge and, therefore, concur only in the learned majority's judgment.