JUSTICE COATS,
concurring-in part and dissenting in part.
¶87 Today the majority reconsiders almost a half-century of Colorado law, ultimately deeming it appropriate to adopt a new standard for evaluating whether one offense is included in another within the meaning of section 18-l-408(5)(a) of the 1972 Criminal Code, with the immediate consequence of expanding the reach of the double jeopardy bars of both the state and federal constitutions. In doing so, I believe the majority misinterprets the United States Supreme Court’s construction of Fed. R. Crim. P. 31(c), governing a defendant’s entitlement in the federal system to an instruction on an uncharged offense; draws a false equivalence between that standard, even according to the majority’s own understanding, and the constitutional double jeopardy bar; and misreads our voluminous jurisprudence concerning the permissibility of convicting a defendant of offenses not named in the charging document, as well as the limitations on subjecting defendants to multiple convictions at the same proceeding.
¶88 I find particularly objectionable the majority’s willingness to overrule (without so much as mentioning the time-honored principle of stare decisis, much less offering a justification for declining to adhere to it) Meads v. People, 78 P.3d 290 (Colo. 2003)— the sole case by this court, decided little more than a decade ago, litigating the precise *829 question at issue today and expressly rejecting the solution advocated by today’s majority. And finally, I fear that rather than a standard ■ that can be readily and uniformly applied, the majority’s new standard for identifying lesser included offenses not only upsets the long-established law and practice of this jurisdiction but will hold untold and deleterious consequences for both defendants and the administration of justice alike. I therefore respectfully dissent from the majority’s lesser offense analysis.
¶89 It is now well-established that the double jeopardy clauses of both the state and federal constitutions impact multiple convictions at the same proceeding only to the extent of expressing a presumption that the enacting legislature did not intend more than one conviction for the same offense, at the same proceeding, in the absence of some clear indication to the contrary. See Missouri v. Hunter, 459 U.S. 359, 366-69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); Lewis v. People, 261 P.3d 480, 481-82 (Colo. 2011). Notwithstanding their statutory designations, two offenses are the same for constitutional purposes unless each requires proof of a fact that the other does not. Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Since 1972, by statute in this jurisdiction, the Colorado General Assembly has defined an included offense in terms far broader than the constitutional same-offense standard, see § 18-1-408(5), C.R.S. (2016);[1] see also People v. Raymer, 662 P.2d 1066, 1069 (Colo. 1983) (observing that section 18-1-408(5) codified a “substantially broader” test for a lesser included offense than that developed by pre-Criminal Code case law), and has protected criminal deféndants from multiple convictions more broadly still both by barring convictions, whether simultaneous or not, of certain offenses that would not constitute the same or included offenses according to either the statutory or constitutional standard, see § 18-1-408(1),[2] and by prohibiting consecutive sentences for conviction of a still broader class of offenses, based on the evidence offered to prove them, see § 18-1-408(3).
¶90 We have at times equated one particular aspect of our statutory, ineluded-offense test with the constitutional, Blockburger same-offense standard. See § 18-1-408(5)(a); People v. Leske, 957 P.2d 1030, 1036 (Colo. 1998). In Meads v. People, we expressly considered the situation in which a less serious offense differs from a more serious offense not only by requiring proof of fewer facts, or elements, than the more serious offense but also by requiring proof of a specific instance, or example, of a more general category, or class, of conduct proscribed by the. more serious offense. 78 P.3d at 293-94. In Meads, we held that for purposes of the Blockburger standard, embodied in our section 18-1-408(5)(a), the less serious offense is not the same as, or included in, the more serious offense because offenses related in this way each require proof of a fact the other does not—more particularly that by requiring proof of a narrower class of conduct or thing, the less serious offense requires proof of a fact the more serious offense does not. Id. at 294-95.
¶91 In doing so, however, we also distinguished those situations in which the legislature has actually created multiple crimes, or *830 units of prosecution, within a single rubric or statutory section, see Boulies v. People, 770 P.2d 1274, 1280-81 (Colo. 1989); we declined to address, because we were not faced with, the question whether, despite not involving the same or included offenses under the Blockburger standard, conviction of both offenses at issue in that case would nevertheless have been precluded for involving one offense proscribing a designated kind of conduct generally and another proscribing a specific instance of that conduct, see § 18-1-408(1)(d); and we expressly noted that because the thing of value satisfying the elements of the more serious offense in that case was actually a motor vehicle, as required to satisfy the elements of the less serious offense, the defendant could statutorily be, and actually was, sentenced to no more than a concurrent term of incarceration, see Meads, 78 P.3d at 296.
¶92 Quite apart from the feasibility of imposing multiple judgments of conviction or sentences on a defendant at a single proceeding, the question whether one offense is included in another separately impacts the ability of a jury, at the request of one party or the other, to convict of offenses not specifically presented in the charging document. In the federal system, Rule 31(c) of the Federal Rules of Criminal Procedure permits a defendant to be found guilty of an offense necessarily included in the offense actually charged, and that rule has been interpreted by the Supreme Court to reciprocally permit lesser included offense instructions, but only instructions on lesser included offenses, as requested by either the defense or prosecution. Although the Colorado Rules of Criminal Procedure contain a substantially identical Rule 31, there is no mutuality of entitlement to present the jury with an instruction on á lesser uncharged offense in this jurisdiction. As the result of pre-Criminal Code and pre-Rules case law, the prosecution is entitled to present the jury with only a lesser included offense, or its equivalent, see People v. Garcia, 940 P.2d 357 (Colo. 1997), as modified on denial of reh’g (Aug. 4, 1997); People v. Barger, 191 Colo. 152, 550 P.2d 1281 (1976); People v. Cooke, 186 Colo. 44, 525 P.2d 426 (1974), while a criminal defendant is entitled to a lesser offense instruction, whether included in the charged offense or not, see People v. Rivera, 186 Colo. 24, 525 P.2d 431, 434 (1974), as long as the evidence at trial presents a rational basis to acquit of the greater charged offense and convict of the lesser added offense, see People v. Aragon, 653 P.2d 715, 720 n.5 (Colo. 1982).
¶93 Faced with the question whether a defendant was entitled to present the jury with an option to convict of an offense other than the “principal charge,” this court, in Rivera, distinguished our test for determining whether one offense is included in another, which it characterized as the “statutory test,” from what it referred to as the “eviden-tiary test,” 525 P.2d at 433, but held that in any event, in the interest of permitting compromise and producing fairer verdicts, a criminal defendant should not be limited to instructions on lesser included offenses, id. at 434. While the allowance of lesser non-included offense instructions by defendants has been explicitly criticized by the Supreme Court as hardly leading to reliable results, see Hopkins v. Reeves, 524 U.S. 88, 99, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998), and clearly represents a minority position, see generally Ronald G. Donaldson, Annotation, Lesser-Related State Offense Instructions: Modem Status, 50 A.L.R. 4th 1081 (1986) (noting that acceptance of the concept of lesser non-included offense instructions “has to date been limited in state courts”); see, e.g., People v. Birks, 19 Cal.4th 108, 77 Cal.Rptr.2d 848, 960 P.2d 1073, 1082-90 (1998) (California Supreme Court retreating from its prior allowance of lesser non-included offense instructions following Hopkins), this jurisdiction has steadfastly continued to permit it. Unlike the federal rule, with its essential feature of mutuality of entitlement to added offense instructions, in this jurisdiction it is therefore inconsequential whether a defendant’s requested offense is included in the charged offense, under any standard.
¶94 Today the majority overrules our judgment to the contrary in Meads in reliance on an isolated sentence from a United States Supreme Court opinion solely addressing a defendant’s entitlement to an instruction on an uncharged lesser included offense, under *831 Fed. R. Crim. P. 31(c) of the federal system, and distinguishing an “elements approach” from an “inherent relationship approach” generally, without the slightest suggestion that its use of the word “subset” was intended to have implications for the double jeopardy problem at all, much less to address the particular nuance in application of that doctrine at issue here. See Schmuck v. United States, 489 U.S. 705, 716, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (emphasis added) (“Under this test, one offense is not ‘necessarily included’ in another unless the elements of the lesser offense are a subset of the elements of the charged offense.”). Not only did the Court not draw any connection between Rule 31(c) and the Blockburger test, sometimes referred to as the “same-elements test,” see United States v. Dixon, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), other than by describing it as an “elements approach” or “elements test,” but more importantly, it clearly used the term “subset” in reference to the offense as “charged in the indictment,” Schmuck, 489 U.S. at 719, 109 S.Ct. 1443, rather than as more broadly defined by statute.
¶95 In the sentence immediately following its use of the term “subset,” the Court explains that “[wjhere the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c).” Id. at 716, 109 S.Ct. 1443. The entire thrust of the Court’s rejection of the inherent relationship approach in favor of the elements approach is that “[tjhe elements test, in contrast, permits lesser offense instructions only in those cases where the indictment contains the elements of both offenses and thereby gives notice to the defendant that he may be convicted on either charge.” Id. at 718, 109 S.Ct. 1443. At one point in its analysis, the Court even finds that the Ninth Circuit Court of Appeals unequivocally applied the elements test in holding: “‘To be necessarily included in the greater offense the lesser must be such that it is impossible to commit the greater without first having committed the lesser.’ ” Id. at 719, 109 S.Ct. 1443 (citation omitted). Unlike the subset theory of the majority, it is abundantly clear, and in fact the entire basis for its “elements approach” to interpreting the “necessarily included” language of the rule, that the Supreme Court would not sanction the addition of any offense as to which the defendant was not put on notice by the particular charge in the indictment, whether the lesser offense constituted a subset of the statutory definition of the charged offense or not.
¶96 In addition to the (at least) highly questionable nature of the majority’s understanding of the Supreme Court’s construction of the federal rule, as well as its attempt to apply that understanding to our own statutory scheme for quite different purposes, the majority offers no suggestion of a change in circumstances sufficient to justify overruling a recent judgment of this court. On the contrary, the Supreme Court jurisprudence upon which it relies as the mainstay of its new standard was available to us at the time we rejected the majority’s subset theory in Meads, and we had, in fact, already cited Schmuck favorably and relied on it, in the context in which it was intended—to determine whether a criminal defendant is put on notice to defend against a charged sentence enhancement factor, to the same extent as would be the case of an actual element of the charged offense. See Garcia, 940 P.2d at 360-64. In the absence of subsequent legislative action or conflicting jurisprudence by this court that might undermine our reasoning in Meads, the only significant change in circumstances would appear to be the makeup of the court. Cf. Mitchell v. W.T. Grant Co., 416 U.S. 600, 636, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (Stewart, J., dissenting) (“A basic change in the law upon a ground no firmer than a change in our membership invites the popular misconception that this institution is little different from the two political branches of the Government. No misconception could do more lasting injury to this Court and to the system of law which it is our abiding mission to serve.”).
¶97 I do not pretend that the questions of law and policy at issue in the cases before us today are easily resolved or are matters as to which reasonable minds cannot differ. They do, however, clearly implicate a host of interrelated considerations that have been the subject of litigation before the court of ap *832 peals, this court, and the Supreme Court of the United States for many years. Whether an enacting legislature intended to create more than one offense at all, and even if so, whether those offenses are for constitutional purposes actually the same; whether the legislature has indicated with sufficient clarity that it intends cumulative convictions and punishments for constitutionally identical offenses proved at the same proceeding; whether separate punishments should be precluded even under some circumstances in which multiple convictions are permitted; and whether and under what circumstances a jury may consider and convict criminal defendants of offenses not actually charged are all questions implicated by the way in which offenses are identified as being either the same as or included in one another. Practical considerations concerning prosecuting, defending, and sentencing are all implicated by changes to the way these determinations are made. I for one am not inclined to upset settled expectations in virtually every aspect of the criminal justice system by abruptly altering existing law, whatever might be my preference if writing on a blank slate, for no better reason than to prevent an unpunisha-ble misdemeanor diiving offense from also appearing on the record of a defendant convicted of a felony for the same driving episode.
¶98 Despite agreeing with the majority’s plain error analysis, I respectfully dissent from its adoption of a new lesser included offense standard and its holding that DUI is a lesser included offense of both vehicular assault-DUI and vehicular homicide-DUI.
I am authorized to state that JUSTICE EID and JUSTICE BOATRIGHT join in this concurrence in part and dissent in part.

. An offense is included in an offense charged in the indictment or the information when the former: "is established by proof of the same or less than all the facts required to establish the commission of the offense charged”; "consists of an attempt or solicitation to commit the offense charged or to commit an offense otherwise included therein"; or "differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.” § 18-l-408(5)(a)-(c).

. When the conduct of a defendant establishes the commission of more than one offense, he may not be convicted of more than one offense if: "one offense is included in the other, as defined in [section 18-1-408(5)]”; "[o]ne offense consists only of an attempt to commit the other”; “ [¡Inconsistent findings of fact are required to establish the commission of the offenses”; "[t]he offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct”; or "[t]he offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods or instances of such conduct constitute separate offenses.” § 18-l-408(l)(a)-(e).